**People of the State of Illinois, Appellee, v. Lucius H. Smith, Appellant.**

**Gen. No. 50,431.**

First District, Fourth Division.

March 18, 1966.

Barry Goodman and Bernard B. Brody, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant, a chiropodist, was convicted after a jury trial of unlawfully prescribing narcotics for Dan Daniels (a police officer) and was sentenced to the penitentiary for a term of not less than ten nor more than twelve years. In this appeal defendant contends that the court committed various prejudicial errors which deprived him of a fair trial and that the prescriptions are exempt under the Narcotics Act.

Officer Dan Daniels testified that on February 21, 1963, at approximately 10:00 p. m., he went to the defendant's office in the company of Jane Ferguson (a special police employee) and that he possessed $30 in prerecorded funds. The witness further testified that he had never before been a patient of Dr. Smith but had seen him previously; that Ferguson introduced him to Dr. Smith, after which defendant wrote Daniels a prescription for morphine (People's Exhibit 4) at the latter's request and without a physical examination; that he did not complain about any foot ailment; that after defendant handed him this prescription, he (Daniels)

requested a prescription for dilaudid; that defendant wrote the second prescription (People's Exhibit 5), asked whether it should be under the same name, and was told to use the name Bernie Brown. Daniels also stated that he gave defendant the aforesaid $30; that he was in the office between five and ten minutes and that he could not recall whether defendant asked any questions relating to his physical condition; that he had a temporary heart strain and was excused from policy duty from November 16, 1962, to February 1, 1963, but he did not discuss this condition with the defendant; and that he found the $30 in prerecorded funds in defendant's pocket when the latter was arrested shortly thereafter.

Officer John Rouzan testified that he went to defendant's office at approximately 10:15 p. m. that same evening with $15 in prerecorded funds and was accompanied by William Passmore; that he was not a patient of the defendant; that defendant answered the phone and said "The fellow and girl that just left was—the fellow was a policeman," after which Rouzan told the defendant: "Get me a script, I want to get out of here before the policeman comes." The witness further stated that defendant asked his name and address, wrote something on a prescription blank and gave it to him using the name Jerry Vick (People's Exhibit 9); that he gave defendant the $15 and returned to his police car; that he and Officers Brown and Daniels returned to the defendant's office and placed him under arrest.

Charles Vondrak, a police officer and registered pharmacist, testified that Exhibit 4 was a prescription calling for thirty morphine tablets, one-quarter grain, and that Exhibits 5 and 9 each call for thirty dilaudid tablets, one-sixteenth grain; and that dilaudid is a dihydromorphinone hydrochloride.

Defendant testified in his own behalf and admitted that Dan Daniels was in his office with Jane Ferguson

85

■■■■■

on the evening in question. He stated that he took Daniels into the consultation room where the latter complained of having pain in his foot; that no one else was present in the room; that he asked Daniels his name and address and how long he had that pain, whereafter Daniels replied that it was an excruciating pain in the front part of his foot which had troubled him for about a week; that Daniels told him that he had the pain once before and was given medicine which alleviated it, and that he (Daniels) had a heart condition. Defendant also testified that after Daniels answered several other questions he made a diagnosis of metatarsalgia, an excruciating pain in the forepart of the foot caused by the metatarsal bones pressing upon an injury in a nerve; that based upon his diagnosis he wrote a prescription (Exhibit 4); that the examination lasted ten or fifteen minutes and that he charged Daniels $15, his customary fee for a night call. Defendant further testified that shortly after Daniels left his office another man came into his office and he prescribed a pain reliever (which he identified as People's Exhibit 5). Defendant stated that the next visitor in his office (Officer Rouzan) was a highly nervous person; that he complained of difficulties with his feet; that he thought the patient was a diabetic but the patient told him that he wasn't; that he gave him a prescription (Exhibit 9) and charged the patient $15.

On cross-examination defendant testified that Jane Ferguson had been a patient for approximately three months prior to February 1963; that she had an oral and physical examination; and that he prescribed a treatment for her ailment.

Jane Ferguson, an admitted narcotics addict and police informer, testified in rebuttal and corroborated the testimony of Dan Daniels as to his receipt of the prescriptions. The witness also stated that she first saw the defendant in December of 1962, at which time she was addicted to morphine; that she never complained to the

86

defendant of any foot ailment and that he never examined her feet but that the defendant gave her several prescriptions, each calling for morphine sulphate; and that she gave the defendant $15 for every prescription.

On cross-examination the witness stated that she was a dancer and admitted that she had been arrested twice, once for prostitution; that she last used narcotics on March 21, 1963; and that from February 21 to March 21 of that year she obtained her narcotics on the street. An effort was made to ascertain where she presently resided but an objection thereto was sustained.

Dr. Thomas Brandt, a podiatrist, testified that it is not within the general practice of podiatry to prescribe a narcotic drug without a physical examination. On cross-examination he testified that it is possible that a podiatrist could prescribe morphine-sulphate to relieve pain after an oral examination and a diagnosis of meta-tarsalgia; that it is conceivable that a podiatrist, in the course of his practice, might orally examine the patient and prescribe for him; and that morphine sulphate is a drug used to relieve pain, as is dilaudid.

The Uniform Narcotic Drug Act provides that a chiropodist, in good faith and in the course of his professional practice only, may prescribe narcotic drugs.[1] The jury found that defendant did not act in good faith in prescribing narcotics for Dan Daniels.

---

[1] Section 3 (Ill Rev Stats 1961, c 38, § 22–3) provides in relevant part that:

It is unlawful for any person to . . . prescribe . . . any narcotic drug, except as authorized in this Act.

Section 11 (Ill Rev Stats 1961, c 38, § 22–11) provides in pertinent part that:

A dentist or chiropodist, in good faith and in the course of his professional practice only, may prescribe, administer and dispense narcotic drugs.

■ Defendant, contending that he was deprived of a fair trial, urges first that the court committed prejudicial error in allowing, over objection, People's Exhibits 1 and 6, respectively, to be introduced into evidence. These exhibits were subsequently passed to the jury for inspection. Exhibit No. 1 is a list by serial number of the bills which were allegedly given to the defendant by Officer Daniels. It bore the following legend:

> The following is a list of official funds to be used in making a controlled purchase of narcotics from Dr. Lucius Smith.

Exhibit No. 6 is a similar list of bills which were allegedly given the defendant by Officer Rouzan and contained the following notation:

> The following list of U.S.C. is from the official funds of the O.C.D. for a controled [sic] purchases [sic] of narcotics.

There is no testimony that any narcotics were *purchased* by Daniels from the defendant nor is the defendant charged with *selling* narcotics. In United States v. Brandenburg, 155 F2d 110 (a case under the federal narcotics law) the prosecution offered into evidence three prescriptions which were inadvertently attached to sheets of paper bearing language to the effect that prescriptions were "purchased" from the defendant, whereas the issue in the case was whether the defendant had written the prescriptions in good faith. The court granted a new trial, stating at page 113 that:

> Obviously, these hearsay statements might have been influential in the jury's determination of the vigorously contested question of Dr. Brandenburg's good faith. And on appeal, we are unable to evaluate what weight the jury attached to them: (authority omitted).

88

The introduction into evidence of People's Exhibits 1 and 6 was prejudicial error.

█ Defendant also argues that the court improperly limited the cross-examination of Jane Ferguson, an addict-informer of dubious character, in that an objection was sustained to an inquiry on cross-examination as to where the witness was living. On direct examination Ferguson testified that she was with Officer Daniels in defendant's office at about 10:00 p. m. on the night in question; that Daniels asked the doctor for a prescription; that the defendant said, "What for" and Daniels answered, "Morphine"; that defendant then wrote out a prescription and handed it to Daniels, after which defendant wrote Daniels a prescription for dilaudid at the latter's request; and that Daniels gave defendant $30. From this testimony it can be inferred that defendant did not inquire as to Officer Daniels' foot condition prior to writing the prescriptions. That testimony supplied an important element with respect to the issue of defendant's good faith, since Officer Daniels testified that he could not recall whether defendant asked him any questions relating to his physical condition. The police informer (Jane Ferguson) was an admitted narcotic addict who had been arrested twice, once for prostitution. Moreover, she admitted obtaining narcotics up to one month after defendant's arrest. Under these circumstances Ferguson's place of residence was a legitimate subject of inquiry on cross-examination to determine her interest in the outcome of defendant's case and, in general, her complete environment and motivation. Alford v. United States, 282 US 687; People v. Soto, 64 Ill App2d 94, 212 NE2d 353.

We find that because of the aforesaid errors of the trial court the defendant did not receive a fair trial.

Defendant also contends that the prescriptions in question are exempt under the Narcotics Act since, although

89

each prescription was for thirty pills, the morphine content of each pill did not exceed one-quarter grain.[2] We would point out that the aforsaid exemption is subject to the conditions set forth in section 12(4)(a) of the Act (Ill Rev Stats 1961, c 38, § 22–12(4)(a)):

> (4) The exemptions authorized by this Section shall be subject to the following conditions:
>
> (a) No person shall prescribe . . . under the exemption of paragraph (1) of this Section, to any one person, . . . any preparation or preparations included within that paragraph, when he knows, or can by reasonable diligence ascertain, that such prescribing . . . will provide the person to whom or for whose use . . . such preparation is prescribed . . . within any 48 consecutive hours, with more than . . . one-half grain of morphine or any of its salts, or will provide such person . . . within 48 consecutive hours, with more than one preparation exempted by paragraph (1) of this Section from the operation of this Act.

The prescriptions in question contain the notation "Use as directed." There was no testimony as to whether defendant directed Officer Daniels with regard to the use of the pills. If there were no such directions defendant failed to come within the terms of the aforesaid section of the act and no claim of exemption would be available to him.

---

[2] Section 12 (Ill Rev Stats 1961, c 38, § 22–12) provides that:

Except as otherwise in this Act specifically provided, this Act shall not apply to the following cases:

(1) Prescribing . . . any medicinal preparation that contains . . . in one avoirdupois ounce . . . (b) not more than one-quarter of a grain of morphine or of any of its salts . . . .

The defendant's conviction is reversed and the cause remanded for a new trial in a manner not inconsistent with the views expressed in this opinion.

Reversed and remanded.

ENGLISH and McCORMICK, JJ., concur.