**People of the State of Illinois, Plaintiff-Appellee, v. Fleming Smith, Defendant-Appellant.**

Gen. No. 50,159.

First District, First Division.

May 9, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant was convicted in a bench trial of the unlawful sale of narcotic drugs, and was sentenced to a term in the Illinois State Penitentiary of not less than ten years nor more than eleven years. In this appeal, he does not challenge the sufficiency of the evidence to support his conviction, but contends: 1) that the State was obliged to reveal the true name of an informer who testified at the trial; 2) that defendant was entrapped into committing the offense; and 3) that the indictment failed to meet statutory standards because it failed to specify the place of the offense.

The sale of narcotics for which the defendant was convicted was made on February 28, 1964, to a narcotics addict and paid police informer who, at the trial, identified himself by the admittedly false name of James Jordan. On that day Jordan went to a district police station in Chicago where he met police officers Strom and House. The three men proceeded to a location on 43rd Street near the "L" tracks, where Jordan pointed out the defendant. They then returned to the police station, where Jordan was thoroughly searched and then given six one-dollar bills and four quarters in marked currency and coin. Upon their return to the place where Jordan had pointed out the defendant, Jordan entered a restaurant near the "L" tracks; Officer House, a few feet from the restaurant, watched through the window, while Officer Strom watched from across the street. House testified that he saw Jordan and the defendant conversing, but that the defendant turned his back and House could not see more. Jordan testified that when he was in the restaurant he told the defendant he would like to buy "half a sixteenth" from him, but defendant told him he only had a $5 bag, which he agreed to sell for $4.75. Jordan gave him four one-dollar bills and three quarters, whereupon the defendant opened the fly of his pants and gave the defendant the tinfoil package which later was found to contain heroin. Jordan then left the restaurant, gave a prearranged signal indicating that he had made the purchase, and turned over to Officer Strom the package and $2.25. Officer House, meanwhile, entered the restaurant, sat at the counter near the defendant, and ordered a cup of coffee. Officer Strom field-tested the powder in the package, and then he and Officer House arrested the defendant. A search of his person produced, among other things, another bag of narcotics, which was recovered from the fly of his pants,

and four of the recorded one-dollar bills. None of the marked quarters was recovered.

The defendant testified that he had known James Jordan casually for a few years, that he had known Jordan was an addict, and that he had been an addict himself. He further testified that on the day in question Jordan asked him if he knew where Jordan might get some narcotics; and that he answered that he only had one $5 bag, which was for his own use, but that Jordan might get some from another man whom defendant pointed out in the restaurant. Defendant claimed that Jordan then contacted the other man, and indicated upon his return that, "Everything was mellow," which meant that he had succeeded in making a purchase. Defendant contended that he might have received the four marked bills in change when he paid for a cup of coffee with a five-dollar bill.

 The informer Jordan, on cross-examination, testified over the State's objection that Jordan was not his correct name; but when defense counsel then asked for his correct name, the State's objection on behalf of the informer's safety was sustained. Defendant now contends that this failure to disclose the informer's true name is grounds for dismissal, where the informer was an active participant in the crime, citing Roviaro v. United States, 353 US 53. But we conclude that Roviaro differs materially on the facts from this case, and therefore does not apply. In that case, the court found that the government, by refusing to disclose the identity of an informer who took an active part in the crime but who did not appear as a witness at the trial, prevented the defendant from gaining access to one whose testimony could possibly have been vital to the defense. It was not alleged in that case that the defendant had means of identifying the informer other than the requested disclosure of his true name. The United States

Supreme Court, in discussing the so-called "informer's privilege," observed,

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. (353 US at 59.)

The court went on to state, (353 US at 62) :

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend upon the particular circumstances of each case, taking into consideration the crime charged, the possible significance of the informer's testimony, and other relevant factors.

The Court concluded that since the government's refusal to disclose the informer's identity in that case rendered his potentially vital testimony inaccessible to the defendant, the nondisclosure constituted reversible error.

But in the case at bar, the informer appeared as a witness, and was therefore subject to cross-examination by the defendant. This fundamental difference distinguishes the two cases. But furthermore, there are indications in the record that the defendant did not need disclosure of the informer's true name to determine his identity. Defendant testified that he had known the informer ". . . a few years or so, casually," prior to the day of the sale. Defendant's counsel asked the informer whether he was known "in the streets" by a specified nickname, but upon the State's objection he was not

permitted to answer. Later in the trial, in another context, defendant's counsel volunteered the comment, in reference to the informer, "I represented him before, I know him."

█ Even assuming arguendo that defendant could not otherwise discover the informer's identity, we discern no disadvantage whatever which could have resulted to him on that account. Defendant contends that if he had been supplied the informer's true name, he could have determined whether the informer had given inconsistent testimony in the trial of another man who was convicted for selling narcotics in that restaurant on that day. But there is no indication that, even if there were such a case and even if the informer did testify therein, the informer used his correct name in that case any more than in the case at bar. We conclude that the defendant was not prejudiced by the failure of the State to disclose to him the true name of an informer who had been produced as a witness, and whose identity was either known to the defendant or otherwise ascertainable by him.

██ Defendant next contends that he was unlawfully entrapped by a paid police informer into the commission of the offense, and therefore is entitled to his dismissal. This defense was not urged in the trial court, and therefore cannot be raised for the first time on appeal. People v. Redding, 28 Ill2d 305, 308, 192 NE2d 341; People v. Outten, 13 Ill2d 21, 24, 25, 147 NE2d 284. Defendant urges that while the defense of entrapment was not specifically pleaded or relied upon in the trial court, it was clearly suggested, and that this is sufficient under People v. Strong, 21 Ill2d 320, 172 NE2d 765. But here, there was no mention of entrapment at the trial; in fact, defendant's line of defense was a denial that he had sold the narcotics to the informer at all. Such a position is diametrically opposed to a defense of entrapment, and we feel negates the contention that en-

294

trapment was "clearly suggested" in the trial court. People v. Outten, 13 Ill2d 21, 147 NE2d 284. Furthermore, even if that defense could be raised at this point by the defendant, the facts of this case do not disclose the inducement on the part of the police which is required to sustain an entrapment defense. People v. Gray, 27 Ill2d 527, 190 NE2d 368, cert denied, 375 US 864. In support of his claim that he was unlawfully entrapped, defendant cites People v. Strong, 21 Ill2d 320, 172 NE 2d 765. But in Strong, the narcotics which the defendant had been convicted of selling had been supplied to him for that purpose by the State. The case is clearly distinguishable on those grounds.

■ Finally, defendant contends that the indictment, in failing to name the place of the offense as definitely as could be done, failed to satisfy the requirements of subsection 111–3(a)(4) of the Code of Criminal Procedure (Ill Rev Stats, c 38, § 111–3(a)(4), 1963). He also cites People v. Williams, 30 Ill2d 125, 196 NE2d 483, in support of this contention. The indictment alleged that the offense was committed on February 28, 1964, at and within Cook County, and therefore satisfied that statutory requirement as interpreted in the later cases of People v. Blanchett, 33 Ill2d 527, 212 NE2d 97, and People v. Reed, 33 Ill2d 535, 213 NE2d 278, decided by our Supreme Court subsequent to the filing of the original briefs in this case. The indictment was therefore valid.

For the foregoing reasons, the conviction must be affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.