## SMITH *v.* ILLINOIS.

No. 158.   Argued December 7, 1967.—Decided January 29, 1968.

*Gerald W. Getty* argued the cause for petitioner. With him on the briefs were *James J. Doherty* and *Marshall J. Hartman.*

*John J. O'Toole,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *William G. Clark,* Attorney General, and *Philip J. Rock,* Assistant Attorney General.

Opinion of the Court by MR. JUSTICE STEWART, announced by MR. JUSTICE FORTAS.

In *Pointer v. Texas,* 380 U. S. 400, 403, this Court held that the Sixth Amendment right of an accused to confront the witnesses against him is a "fundamental right . . . made obligatory on the States by the Fourteenth Amendment." The question presented in this case is whether Illinois denied that right to the petitioner, Fleming Smith. He was convicted in a criminal court of Cook County, Illinois, upon a charge of illegal sale of narcotics, and his conviction was affirmed on appeal.[1]

---

[1] 70 Ill. App. 2d 289, 217 N. E. 2d 546.

We granted certiorari to consider his constitutional claim.[2]

At the trial the principal witness against the petitioner was a man who identified himself on direct examination as "James Jordan." This witness testified that he had purchased a bag of heroin from the petitioner in a restaurant with marked money provided by two Chicago police officers. The officers corroborated part of this testimony,[3] but only this witness and the petitioner testified to the crucial events inside the restaurant, and the petitioner's version of those events was entirely different.[4] The only real question at the trial, therefore, was the relative credibility of the petitioner and this prosecution witness.

On cross-examination this witness was asked whether "James Jordan" was his real name. He admitted, over the prosecutor's objection, that it was not. He was then asked what his correct name was, and the court sustained the prosecutor's objection to the question.[5] Later the

---

[2] 387 U. S. 904.

[3] The officers testified that the witness had entered the restaurant with the marked money and without narcotics, and that he had emerged with a bag of heroin. They also testified that they had found some of the marked money in the petitioner's possession when they arrested him.

[4] The petitioner testified that he had refused to sell the witness narcotics but had directed him to another man in the restaurant from whom he believed a purchase had been made. The petitioner also testified that he used a $5 bill to purchase a cup of coffee, and must have received the marked money in his change.

[5] "MR. PRIDE: Is James Jordan your correct name?

"MR. MARTWICK: Object.

"MR. PRIDE: I have a right to know if it is his correct name.

"THE COURT: He may answer if it is his correct name or not.

"MR. PRIDE: Is that your correct name?

"A. No, it is not.

"Q. What is your correct name?

"MR. MARTWICK: Object.

"THE COURT: I won't have him answer that."

witness was asked where he lived, and again the court sustained the prosecutor's objection to the question.[6]

As the Court said in *Pointer,* "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." 380 U. S., at 404. Even more recently we have repeated that "a denial of cross-examination without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Brookhart* v. *Janis,* 384 U. S. 1, 3.

In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" [7] through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

---

[6] "Q. Now, where do you live now?
"Mr. Martwick: Objection.
"Mr. Pride: This is material.
"Mr. Martwick: Objection, Judge.
"The Court: Yes, objection allowed."
The record shows that in fact the petitioner and his lawyer knew "Jordan" and that the lawyer had once represented him. However, there is no evidence in the record that either the petitioner or his lawyer knew "Jordan's" correct name or where he was living at the time of this trial.

[7] See *Pointer* v. *Texas,* 380 U. S., at 404.

In *Alford* v. *United States,* 282 U. S. 687, this Court almost 40 years ago unanimously reversed a federal conviction because the trial judge had sustained objections to questions by the defense seeking to elicit the "place of residence" of a prosecution witness over the insistence of defense counsel that "the jury was entitled to know 'who the witness is, where he lives and what his business is.'" 282 U. S., at 688–689. What the Court said in reversing that conviction is fully applicable here:

> "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. . . . To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. . . .
>
> ". . . The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed. . . .
>
> • • • • •
>
> "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. . . . But no obligation is imposed

on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him. . . . But no such case is presented here. . . ." 282 U. S., at 692–694.

In *Pointer* v. *Texas, supra,* the Court made clear that "the right of an accused to be confronted with the witnesses against him must be determined by the same standards whether the right is denied in a federal or state proceeding . . . ." 380 U. S., at 407–408. In this state case we follow the standard of *Alford* and hold that the petitioner was deprived of a right guaranteed to him under the Sixth and Fourteenth Amendments of the Constitution.[8]

*Reversed.*

MR. JUSTICE WHITE, with whom MR. JUSTICE MARSHALL joins, concurring.

In *Alford* v. *United States,* 282 U. S. 687, 694 (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to en-

---

[8] It is to be noted that no claim of the privilege against compulsory self-incrimination was asserted by "James Jordan." Cf. *United States* v. *Cardillo,* 316 F. 2d 606. Nor are this Court's decisions in *McCray* v. *Illinois,* 386 U. S. 300, and *Roviaro* v. *United States,* 353 U. S. 53, relevant here. In neither of those cases was the informer a witness for the prosecution. Another recent Illinois decision seems to have recognized that the state evidentiary informer privilege is not involved when the informer is himself a witness at the trial. *People* v. *Smith,* 69 Ill. App. 2d 83, 89, 216 N. E. 2d 520, 523. See 8 Wigmore, Evidence § 2374, n. 6 (McNaughton rev. 1961).

danger the personal safety of the witness. But in these situations, if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling. Here the State gave no reasons justifying the refusal to answer a quite usual and proper question. For this reason I join the Court's judgment and its opinion which, as I understand it, is not inconsistent with these views. I should note in addition that although petitioner and his attorney may have known the witness in the past, it is not at all clear that either of them had ever known the witness' real name or knew where he lived at the time of the trial.

MR. JUSTICE HARLAN, dissenting.

We granted certiorari in this case believing that it presented with requisite clarity the issue whether a defendant in a state criminal trial may constitutionally be denied on cross-examination of a principal state witness the right to question such witness as to his actual name and address. Were I still of the view, after examination of the record, that this case clearly presents that question, I would concur in the Court's judgment on due process, but not on Sixth Amendment "incorporation," grounds.* The record, however, raises serious doubt that this petitioner was denied any information that he did not already have, thus either rendering the error harmless or at least making the issue inappropriate for constitutional adjudication.

The State's witness identified himself as "James Jordan." Apparently knowing that this was not his real

---

*See my opinion concurring in the result in *Pointer* v. *Texas*, 380 U. S. 400, 408.

or his only name, defense counsel asked Jordan whether that was his correct name, and received a negative reply. Further inquiry was disallowed by the trial judge as to both the witness' name and address. Later, however, defense counsel said of the witness "I represented him before, I know him." Still later, when asked by defense counsel on direct examination how long he had known James Jordan, the defendant replied, "I'd say a few years or so, casually." The defendant also indicated that he knew Jordan to be a narcotics addict, and that he knew that Jordan was acquainted with a person whose legal name he knew to be Herbert Simpson.

In the face of these developments, the Court's suggestion that perhaps the defense nevertheless did not know Jordan's name or address is, to say the least, exceedingly dubious. At no point did defense counsel, or defendant, state that he lacked the requested information, nor did counsel pursue the point with any vigor after the State's objections to the questions; he simply turned to another series of questions without suggesting any way in which his attempt to present a defense had been prejudiced. The inference seems to me patent that counsel was asking routine questions, to which he already knew the answers, and that his failure to get answers in court was of no consequence.

I would not reverse a state conviction on a record so opaque, indeed one savoring of a disingenuous constitutional contention. Cf. *Rescue Army* v. *Municipal Court,* 331 U. S. 549; *Poe* v. *Ullman,* 367 U. S. 497. I would therefore dismiss the writ as improvidently granted.