UNITED STATES of America, Plaintiff-Appellee,

v.

Salvatore BATTAGLIA, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Joseph AMABILE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Dave EVANS, Defendant-Appellant.

Nos. 17774, 17784 and 17793.

United States Court of Appeals, Seventh Circuit.

Oct. 2, 1970.

Raymond J. Smith, Morris A. Haft, Maurice J. Walsh, John Powers Crowley, Charles A. Bellows, Chicago, Ill., for defendants-appellants.

Will Wilson, Asst. Atty. Gen., Beatrice Rosenberg, Marshall Tamor Golding, Attys., Washington, D. C.; D. Arthur Connelly, Asst. U. S. Atty., of counsel; William J. Bauer, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

Defendants' convictions of violation of the Hobbs Act (18 U.S.C. § 1951) were previously affirmed by this Court. 394 F.2d 304; 395 F.2d 47. Subsequently, the Supreme Court remanded these cases to the district court "for further proceedings in conformity with Alderman v. United States," 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, so that the district court could determine, after an appropriate hearing, whether the convictions were tainted by the use of illegally obtained electronic surveillance.

Upon the remand to the district court, the Government turned over to Battaglia's counsel the overhearings involving Battaglia. The Assistant United States Attorney advised the district court that there were no overhearings of defendants Evans or Amabile.

At the hearing before the district court, a special agent of the Federal Bureau of Investigation identified three exhibits as excerpts from logs containing overheard Battaglia conversations that occurred when he visited a Chicago tailoring shop being monitored for other persons' conversations. These were examined by the district court and had previously been examined by us. 394 F.2d 327. The Government withdrew its formal offer to introduce these excerpts into evidence at the hearing after defendant Battaglia objected that proper foundation was lacking. Thereafter, on cross-examination by Battaglia's counsel, the agent explained that his duty was to check the records maintained by the Chicago office of the FBI to determine whether or not an individual had been overheard. He stated that these were the only records in his office of electronic surveillance of Battaglia. The agent also testified that his review of index cards indicating the names of the individuals overheard reinforced his conclusion that there were no other overhearings involving Battaglia. Similarly, he found no records of Airtels involving Battaglia.[1]

At the conclusion of the hearing, the district court found that Battaglia had failed to demonstrate that the overheard conversations "were relevant to, material to, or tainted in any way, the evidence presented at his trial," and that his conviction was not tainted by unlawful electronic surveillance. Therefore, a new judgment was entered against him, with the 15-year sentence and $10,000 fine reimposed. Likewise, the district court reimposed the same penalties upon defendants Amabile and Evans as had previously been set aside by the Supreme Court pending the outcome of the taint hearings.

I

Defendant Battaglia first attacks the correctness and adequacy of the proceedings of the taint hearing.[2] He also contends that the Government was obliged to turn over the index cards.

■ After the Government turned over to Battaglia's counsel the records of the overheard conversations, Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 972, then required Battaglia to "go forward with specific evidence demonstrating taint." Only after Battaglia had shown a ground for finding taint would the Government face the ultimate burden of showing the evidence was untainted. 394 U.S. at p. 183, 89 S.Ct. at p. 972. These strictures were followed by the court below. Instead of attempting to show possible sources of taint, however, defendant's counsel successfully objected to the transcripts of the conversations being received in evidence. Indeed, he has made no attempt

---

1. Airtels are brief summaries of the information contained in logs of recorded conversations and are sent to FBI offices not having possession of the actual logs. See United States v. Hoffa, (7th Cir. 1970).

2. Defendant Evans adopted generally the points raised in the briefs of his codefendants, apparently including Battaglia's objections to the taint hearing. However, no contention has been made by either defendant Evans or Amabile as to defects in the hearing procedure.

to show that they tainted his conviction, apparently agreeing with our prior determination that they were "utterly irrelevant to these convictions." 394 F.2d at p. 328.

■ In *Alderman*, the Court observed that a defendant does not "have an unlimited license to rummage in the files of the Department of Justice." 394 U.S. at p. 185, 89 S.Ct. at p. 973. There has been no showing that the index cards were essential to show taint. Accordingly, we hold that the district court did not abuse its discretion in denying their production and that the hearing satisfied *Alderman*.

## II

■ All three defendants also seek the opportunity to present numerous additional errors relating to their convictions. Although we will not reconsider issues already decided against defendants in their previous appeals (United States v. Hoffa (7th Cir. 1970), we will dispose of five assertedly new points now raised.

■ First, the defendants claim the the district court was required to permit them to learn the current residence of government witness Riley under Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956.[3] However, the record shows that Riley was fearful of physical harm to himself and to his family, so that the trial court properly refused to allow disclosure of Riley's last address. United States v. Varelli, 407 F.2d 735, 750 (7th Cir. 1969); see also United States v. Palermo, 410 F.2d 468, 472 (7th Cir. 1969). In addition, defendants had already been permitted to establish that Riley had reason to cooperate with the Government,

so that it became unnecessary to show that he was in protective custody.[4] Cf. United States v. Daddano, 432 F.2d 1119 (7th Cir., 1970).

■ Battaglia further asserts that prejudicial publicity requires reversal of the convictions in light of the ruling in the related case of United States v. Palermo, 410 F.2d 468 (7th Cir. 1969). In that case, however, the trial judge made no inquiry of the jury as to whether any of them had read prejudicial newspaper items. Here a collective inquiry was twice made of the jury in accordance with Margoles v. United States, 407 F.2d 727, 734–735 (7th Cir. 1969), certiorari denied, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84, and United States v. Rizzo, 409 F.2d 400, 402 (7th Cir. 1969), certiorari denied, 396 U.S. 911, 90 S.Ct. 226, 24 L.Ed.2d 187. Since none admitted contact with prejudicial publicity, it was unnecessary for the district judge to poll each juror separately. United States v. Solomon, 422 F.2d 1110, 1116–1117 (7th Cir. 1970) certiorari denied sub nom.; Sommer v. United States, 399 U.S. 911, 90 S.Ct. 2201, 26 L.Ed.2d 565; United States v. Daddano, 432 F.2d 1119 (7th Cir. 1970).

■ Battaglia argues that the indictment is duplicitous because it charges both a conspiracy and a substantive offense. In this case, the indictment was not duplicitous, for "the allegation of acts which would amount to commission of the substantive offense was merely descriptive of the conspiracy." Reno v. United States, 317 F.2d 499, 502 (5th Cir. 1963), certiorari denied, 375 U.S. 828, 84 S.Ct. 72, 11 L.Ed.2d 60.

■ Battaglia also asserts that the indictment was unconstitutional because it charged a 1964 conspiracy and was

---

3. This point was also raised without avail in the petitions for rehearing en banc to review our prior opinion reported in 394 F.2d 304.

4. Defense counsel knew that Riley was in protective custody (App. 41) and told the jury he would show this (Tr. 19 in United States v. Amabile, et al., No. 67 CR 85

(N.D.Ill.1967)). Amabile's counsel had shown that Di Vito was in protective custody (Tr. 227–234). Battaglia's counsel may have decided not to pursue this same line of questioning with Riley (not blocked by the trial judge's refusal to permit disclosure of Riley's actual address) because it would further emphasize Riley's proclaimed fear for his life.

"amended and distorted" by permitting proof of a conspiracy beginning in 1962. As pointed out in our prior opinion, that evidence was "relevant to show the reasonableness of Riley's fear when confronted with Amabile's demand to authorize the second draw" and the jury was instructed to consider it only for that purpose. 394 F.2d at p. 313.

 Finally, Battaglia and Amabile complain that they were convicted for violating the general conspiracy statute (18 U.S.C. § 371), carrying a five-year maximum prison term, instead of a conspiracy in violation of the Hobbs Act (18 U.S.C. § 1951), which authorizes the imposition of their fifteen-year sentences. They urge that the indictment charges a general conspiracy under 18 U.S.C. § 371 to commit the conspiracy defined under 18 U.S.C. § 1951. An examination of the indictment refutes their claim. Defendants were charged only with conspiring to extort money in violation of the Hobbs Act, which is expressly proscribed thereby.[5] Thus the grand jury charged that defendants and Rocco Pranno "did unlawfully * * * conspire * * * to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951, and the construction of said multiple dwelling units in Lansing, Illinois, and the movement in interstate commerce of materials, supplies, and other commodities required for the construction, sale, rental and management of said multiple dwelling units, and to attempt so to do by extortion, as that term is defined in Title 18, United States Code, Section 1951." The indictment then details parts of the conspiracy and

concludes "[a]ll in violation of Title 18, United States Code, Section 1951."

The judgments of conviction are affirmed.

SWYGERT, Chief Judge (concurring in part).

I agree that the issues presented in this appeal relating to the alleged use of illegally obtained electronic surveillance do not require reversal. However, I adhere to my dissents in the prior appeals and would reverse the convictions of the defendants for the reasons stated therein.

---

5. In pertinent part, the Hobbs Act (18 U.S.C. § 1951 provides:
   "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or *conspires* so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be [punished].
   * * *

"(b) As used in this section—
   * * * * *
   "(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." (Emphasis supplied.)