CALOGERO, Justice.
The defendant, Wanda Gayle Thornton, was charged by Bill of Information with knowingly and intentionally distributing a controlled dangerous substance, marijuana, in violation of La.R.S. 40:966(A). She was found guilty after a jury trial and was sentenced to imprisonment at hard labor for eighteen months.
The defendant reserved and perfected eighteen Bills of -Exceptions but elected to proceed with only Bill No. 8. The other bills are thus abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
Bill No. 8 was reserved when the trial court refused a defense request to order the State’s principal witness, Michael DeSalvo, an undercover narcotics agent of the Jefferson Parish Sheriff’s Office, to reveal his residential address during cross-examination.
The witness had, during direct examination, identified the defendant as the person who, with another subject, had sold him a “brick” of marijuana for $170.00. He related the facts surrounding the transaction and the tests he ran of the substance sold him.
*267 The residential address refusal colloquy was as follows:
“Q: Now Agent DeSalvi, when you first took the stand, you gave your residence as 3828 Veterans Highway, is that right?
“A: I did not, that is not my residence address.
“Q: What is your residence address ?
“A: I prefer not to give it out.
“MR. O’NEIL: May It please the Court, at this time I would ask the Court that the witness be told to give his resident address.
“THE COURT: What is the relevancy of that?
“MR. O’NEIL: Your Honor, the relevancy of this is a United States Supreme Court decision that goes hack to 1832, in which the denial of confrontation in cross-examination, if there be no residence address, so I can check his background, his surroundings and his neighborhood and without this information, I have no right to cross-examination in checking his character.
“THE COURT: The Court is going to overrule the objection.” (Emphasis added)
The defendant cites and relies upon Alford v. United States, 282 U.S. 687, 51 S. Ct. 218, 75 L.Ed. 624 (1931) and Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), in support of her assertion that it was reversible error to disallow the residence inquiry on cross-examination.
Alford was a prosecution for using the mails to defraud. Cross-examination questions seeking to elicit the address of a government witness were disallowed when the government objected. The witness, a former employee of the defendant, gave damaging testimony against the defendant on direct examination. The defendant there argued that answers to the questions were necessary in order to inform the jury as to “who the witness is, where he lives and what his business is.” Additionally he argued that he had cause to believe that the witness was in the custody of Federal authorities and that eliciting this information was proper in his effort to show bias and prejudice.
The Supreme Court, reversing the conviction, said that the questions were proper to identify the witness with his environment and to show possible bias or prejudice resulting from his custodial status. The Court acknowledged that the right of the trial court to regulate the extent of cross-examination when the subject has been exhausted, and the duty imposed on the trial judge to protect the witness from “questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate,” permissible limitations on cross-examination, were not involved.
Smith was a prosecution for an illegal sale of narcotics. There the principal witness against the defendant identified himself as “James Jordan.” He testified that the defendant sold him heroin in a restaurant. Police officers corroborated his testimony except for the crucial events inside the restaurant, which they did not witness. The witness admitted on cross-examination that the name he gave was not his real name. The trial court refused to order him to reveal his real name and address.
The Supreme Court found that the actions of the trial court “emasculated the right of cross-examination itself.” Quoting extensively from Alford, the Court held that the defendant had been deprived of his rights under the Sixth and Fourteenth Amendments. The Court did acknowledge however, that the trial court has a duty to protect the witness from questions which harass, annoy or humiliate.[1]
*268 In a recent case similar to the one before us, the Fifth Circuit Court of Appeals upheld the refusal of a District Court to order a government witness, an undercover narcotics agent, to reveal his residential address. United States v. Alston, 460 F.2d 48 (5th Cir.), cert. denied, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972). The Court there said:
“It is true, as Alston urges, that both Alford and Smith reversed criminal convictions because the home address of a witness was not divulged. But it appears to us that the purpose of Alford/Smith was to safeguard the opportunity for a meaningful and open cross-examination, not to require that a witness always divulge his or her home address.”
The critical question according to the Fifth Circuit is whether or not the defendant was given sufficient “opportunity to place the witness in his proper setting.”
“Thus, while a witness would normally be required to answer all questions regarding his or her background, there are exceptions to that requirement. The witness should have the opportunity to demonstrate to the trial judge that his or her home address does not constitute information necessary ‘to place the witness in his proper setting.’ Put another way, the witness should have the opportunity to demonstrate to the trial judge that the defendant’s solicitation of his or her home address constitutes only an attempt to ‘harass, annoy or humiliate.’ We think that a reasonable interpretation of this area of exception, acknowledged by Smith and Alford, to the usual requirement that the witness divulge background information would include an instant in which the physical safety of the witness or his family might be endangered by disclosure. [Citations omitted] The spectrum of cross-examination is wide and long but it is not infinite in scope. The trial court must have some authority to armor a witness agaihst extra-judicial weaponry.” 460 F.2d at 52.
In the case before us the witness testified that he was an agent with the narcotics division of the Jefferson Parish Sheriff’s Office and that he had been employed for seven years by the Sheriff’s Office. Counsel for defendant on cross-examination extracted all information he sought except the witness’ residential address. Defendant was not denied the opportunity to place the witness in his proper setting. Nor has he shown any other relevant pursuit or area of inquiry which was thwarted by the Court’s refusal to permit the question.
We find creditable the reasons advanced by the trial court in its per curiam to this bill in support of its ruling:
“This court believes that to disclose this officer’s personal residence would accomplish nothing save to expose this narcotics agent and his family to possible threats, harassment and physical harm. Prior to the trial of this case, it had been brought to this court’s attention that a number of Jefferson Parish narcotics agents and their families have been subjected to threats and harassment at their residences. A number of shots were fired into the home of a narcotics agent in a neighboring parish, barely missing the son of the agent. Additionally, the home of another agent in the same parish was fire-bombed.”
Where the question as to the witness’ residence would tend to expose the witness to danger and has no relevance other than a general exploration of his background, the trial court may refuse to order the witness to respond. We are not confronted with a situation where the danger-laden question is of specific relevance to the case.
Under the circumstances of this bill we find no error in the trial court’s ruling. The Bill is without merit.
*269 For the above assigned reason the conviction and sentence are affirmed.
BARHAM, J., dissents with reasons.

. Justices White and Marshall concurred, placing questions which “tend to endanger the personal safety of the witness” in the same category as those which harass, annoy or humiliate.