<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4773**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

     v.

HENRY ZELAYA, a/k/a Homeboy, a/k/a Jose Manuel Alvarado,

            Defendant - Appellant.

**No. 07-4834**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

     v.

JOSE HIPOLITO CRUZ DIAZ, a/k/a Pirana,

            Defendant - Appellant.

**No. 07-4938**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

     v.

OMAR VASQUEZ, a/k/a Duke, a/k/a Sir Duke, a/k/a Pato,

Defendant - Appellant.

---

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, District Judge. (8:05-cr-00393-DKC-19; 8:05-cr-00393-DKC-9; 8:05-cr-00393-DKC-17)

---

Argued: May 14, 2009                    Decided: July 7, 2009

---

Before SHEDD and DUNCAN, Circuit Judges, and Frederick P. STAMP, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Timothy S. Mitchell, LAW OFFICES OF TIMOTHY S. MITCHELL, Greenbelt, Maryland, for Appellant Henry Zelaya; Joseph John Gigliotti, Sr., Silver Spring, Maryland, for Appellant Omar Vasquez; Manuel J. Retureta, RETURETA & WASSEM, PLLC, Washington, D.C., for Appellant Jose Hipolito Cruz Diaz. James Marton Trusty, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendants-appellants Henry Zelaya, Jose Hipolito Cruz Diaz, and Omar Vasquez were indicted by a grand jury sitting in the Southern Division of the District of Maryland of violating 18 U.S.C. § 1961(d), conspiracy to commit racketeering offenses ("RICO") ("Count 1"). A superseding indictment added one count of conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) ("Count 21"). The defendants were tried by a jury and found guilty as charged. The defendants now appeal their convictions. For the reasons that follow, we affirm.

I.

The government provided evidence at trial that the defendants are members of an international gang known as La Mara Salvatrucha ("MS-13"). MS-13 is a national and international criminal organization, consisting of approximately 10,000 members, that regularly conducts gang activities in at least 25 states and the District of Columbia, as well as Mexico, Honduras, and El Salvador. Once in the gang, members frequently engage in criminal activity, including murders, assaults, and kidnappings, as committing acts of violence is required to maintain membership. MS-13 members commonly recite the phrase "mata, viola, controla," which means "kill, rape, control."

3

MS-13 is organized into "cliques" that operate under the umbrella rules of MS-13 and work cooperatively to commit acts of violence. Members meet on a regular basis to discuss acts of violence committed by their cliques, and leaders of cliques from across the United States will meet to discuss gang rules and business, to resolve any issues or problems among the cliques, and to unite gang members across the country. Furthermore, MS-13 members pay dues to be provided to those members imprisoned both in the United States and El Salvador.

At trial, the government presented at least sixty-eight witnesses, including gang experts, gang members and associates, local and federal law enforcement agents, and forensic scientists. Testimony provided at trial showed that Zelaya founded a clique of MS-13 in the state of Maryland and participated in various instances of criminal conduct as part of the clique, including murdering a rival gang member and robbing at gunpoint individuals in a prostitution house. Further testimony indicated that Cruz Diaz, among other things, was involved in gun possession, celebrations of stabbings of rival gang members, and the punishing of MS-13 members for not killing members of other gangs when the opportunities arose. Finally, the government presented evidence that as a leader of multiple MS-13 cliques in the metropolitan District of Columbia area, Vasquez taught newer gang members how to talk, dress, and flash

4

signs. Further, Vasquez participated in a shooting targeting a member of a rival gang and sentenced a MS-13 member and his girlfriend to twenty-six seconds of beating.

Discovery disclosure disputes arose throughout the trial, as the defendants argued that the government failed to disclose both a statement from Cruz Diaz that he was a member of an MS-13 clique and certain Jencks material, as well as allowed evidence of a gang rape allegedly committed by Zelaya and other MS-13 members. The defendants also objected to the district court allowing two individuals from El Salvador to testify under pseudonyms. As a result of these discovery disputes, defense counsel moved for both a severance and a mistrial at different points in the trial. The district court denied both of these motions, instead, providing cautionary instructions to the jury on the necessary issues.

At the conclusion of trial, the defendants were convicted of all counts. Zelaya was sentenced to life imprisonment. Cruz Diaz was sentenced to 420 months imprisonment on Count 1 and 120 months imprisonment on Count 21, to be served concurrently. Vasquez received life imprisonment on Count 1 and 120 months imprisonment on Count 21, also to be served concurrently.

On appeal, the defendants argue that the trial court abused its discretion and violated the defendants' Sixth Amendment rights to confrontation by preventing them from learning the identity of two El Salvadorian witnesses. Specifically, the defendants argue that these witnesses were central to the government's theory that there were connections between the defendants and MS-13 members in El Salvador, and that they should have been able to conduct research on these witnesses to assess their credibility, veracity, and reputations in the community. In response, the government argues that the disclosure of these witness' true names would unnecessarily expose these witnesses and their families to serious danger from retaliation.

Limitations on a defendant's cross-examination of a government witness is reviewed on appeal for an abuse of discretion. United States v. Smith, 451 F.3d 209, 220 (4th Cir. 2006). This Court holds that the district court did not abuse its discretion in disallowing the defendants from learning the names of the two El Salvadorian witnesses.

It is well-settled law that inquiry regarding a witness' full name and place of residence is normally allowed on cross-examination. Smith v. Illinois, 390 U.S. 129, 131-32 (1968) ("To forbid this most rudimentary inquiry at the threshold is

6

effectively to emasculate the right of cross-examination itself."). "The constitutional right of confrontation guaranteed to a state criminal defendant by the fourteenth amendment has as one of its most important aspects the right to cross-examine a hostile witness in order to undermine the credibility of the witness by highlighting the possible influence of bias on the testimony of the witness." Hoover v. State of Maryland, 714 F.2d 301, 305 (4th Cir. 1983).

The right to cross-examination, however, is not absolute. Indeed, the district judge may limit cross-examination when the information sought may endanger a witness' safety. Chavis v. North Carolina, 637 F.2d 213, 226 (4th Cir. 1980). See also United States v. Borda, 178 F.3d 1286, at *7 (4th Cir. 1999) (unpublished) ("When a trial court is satisfied that there is an actual threat to a witness if his identity is disclosed, courts have held that it is proper to withhold this information."); United States v. Palermo, 410 F.2d 468, 472 (7th Cir. 1969) ("[W]here there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address, and place of employment is not absolute."). This threat must be "actual and not a result of conjecture." Palermo, 410 F.2d at 472. The government bears the burden of proving that such a threat exists. Id. When an actual threat is shown, the "district judge must determine whether the information must be

7

disclosed in order not to deny effective cross-examination."

Id.

Our review of the appellate briefs and the sealed affidavits, as well as the sealed transcripts of an ex parte and in camera hearing in which the district judge conducted an examination of the witnesses,[*] persuade us that the district court did not abuse its discretion in preventing the defendants from learning the true identity of the two El Salvadorian government witnesses. The information provided to the district court indicated that the threat to these witnesses and their families, should their true identities be provided, was "actual and not a result of conjecture." Id. Furthermore, the government disclosed to the defense details of these two witnesses, including a pretrial notice regarding the nature of their testimony and a transcript of their previous sworn testimony on the same subject matter presented in this case. This information enabled the defendants to effectively cross-examine the witnesses without threatening their safety.

---

[*]These sealed transcripts, not included in the joint appendix originally filed by the parties in this appeal, were requested by the panel during argument and thereafter forwarded to the Court by the government.

III.

The defendants also raise several other district court errors allegedly committed at trial, including whether the evidence sufficiently established that MS-13 is a criminal enterprise that the defendants conspired with; whether the defendants' discovery complaints violated their due process rights; whether the district court abused its discretion in denying Cruz Diaz's and Vasquez's motion for severance and motion for mistrial; and whether the cumulative error doctrine invalidates the defendants' convictions. Defendant Zelaya also contends that his sentence of life imprisonment is unreasonable. We have carefully reviewed the record, briefs, applicable law, and oral arguments of the parties, and are persuaded that the district court did not commit error regarding these issues. Accordingly, on these issues, we affirm on the reasoning of the district court as set forth in both the trial and sentencing hearing transcripts.


IV.

For the foregoing reasons, the defendants' convictions and sentences are

AFFIRMED.

9