Tyronne R. DICKERSON,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A04–1104–CR–160.

Court of Appeals of Indiana.

Dec. 6, 2011.

Thomas W. Vanes, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Tyronne R. Dickerson appeals his convictions for three counts of Dealing in Narcotics,[1] one as a class A felony and two as class B felonies. He presents the following restated issue for review: Did the trial court commit fundamental error when it granted the State's request to allow the confidential informant to testify anonymously at trial?

We affirm.

This case involves two controlled drug buys on January 25 and 28, 2010. In each instance, Dickerson delivered heroin (two small baggies on the first and eight on the second) to the same confidential informant. This confidential informant was a friend whom Dickerson had known since 2008. Audio and video recordings were made of each transaction, and police maintained visual surveillance of the first. During the second transaction, Dickerson removed the drugs from a cigarette box located within the console of the vehicle he drove to the scene.

Immediately following the second transaction, officers moved in to arrest Dickerson, who attempted to flee. Dickerson was found in possession of cash, which included the $100 in buy money, two cell phones, and a cigarette box that contained 3.62 grams of heroin and several pieces of crack cocaine. The heroin was individually packaged in ten baggies.

The State charged Dickerson with three counts of dealing in narcotics, two as class B felonies for the controlled buys (delivery of heroin) and one as a class A felony for the heroin found upon his arrest (posses-

1. Ind.Code Ann. § 35–48–4–1 (West, Westlaw through 2011 1st Regular Sess.)

sion of more than three grams of heroin with intent to deliver), and one count of possession of cocaine as a class D felony. At trial, the confidential informant was permitted, without objection from the defense, to testify using a number to identify himself, and the defense was directed by pretrial order not to question the informant regarding his personal identifying information.

Dickerson testified in his own defense. He admitted delivering heroin on both occasions to his friend, the confidential informant, but claimed these were drugs that they had jointly purchased.[2] Moreover, Dickerson testified that the heroin and cocaine found upon his arrest were intended for his own personal use.

The jury found Dickerson guilty as charged. The trial court merged the class D felony conviction for possessing cocaine with the class A felony conviction and imposed an aggregate sentence of twenty-five years in prison on the remaining counts. Dickerson now appeals.

Dickerson acknowledges that he did not object to the limitations placed upon his cross-examination of the confidential informant at trial. Therefore, he attempts to circumvent waiver by alleging fundamental error.

■■■ Our Supreme Court has emphasized that the doctrine of fundamental error is only available in egregious circumstances. *Brown v. State*, 799 N.E.2d 1064 (Ind.2003). "The mere fact that error occurred and that it was prejudicial will not satisfy the fundamental error rule." *Absher v. State*, 866 N.E.2d 350, 355 (Ind.Ct. App.2007). Similarly, in order to invoke this doctrine, it is not enough to urge that a constitutional right is implicated. *Absher v. State*, 866 N.E.2d 350. "[W]hen the issue is raised in terms of fundamental error, a defendant must demonstrate that the [constitutional] error worked to his actual and substantial disadvantage, infecting and tainting the entire trial." *Akard v. State*, 924 N.E.2d 202, 209 (Ind.Ct.App. 2010), *aff'd in relevant part* 937 N.E.2d 811 (2010). In other words, the error must be so prejudicial to the rights of the defendant to make a fair trial impossible. *Absher v. State*, 866 N.E.2d 350.

Here, Dickerson argues that the use of a nameless witness violated his state and federal constitutional right to cross-examine witnesses against him. Citing *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), Dickerson contends that the prohibition against inquiry into the name of a State's witness per se constitutes fundamental error. It does not.

■■■ The United States Supreme Court and our Supreme Court have recognized that asking a witness for his name and address is among the legitimate questions for cross-examination. *See Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748; *Pigg v. State*, 603 N.E.2d 154 (Ind.1992). In *Smith*, the Court stated: "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Smith v. Illinois*, 390 U.S. at 131, 88 S.Ct. 748. Recognizing this forceful language, our Supreme Court has held that although a defendant is "pre-

---

**2.** I.C. § 35–48–1–11 (West, Westlaw through 2011 1st Regular Sess.) defines "delivery" in relevant part as: "an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship". Thus, regardless of the circumstances of the delivery, Dickerson effectively admitted the two class B felony dealing counts, which defense counsel acknowledged in his closing statement to the jury.

sumptively entitled to cross-examine a witness concerning such matters as the witness's address[, t]he right is not absolute". *Pigg v. State,* 603 N.E.2d at 157.[3] Moreover, the United States Supreme Court has indicated since *Smith:* "the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (applying a harmless error analysis). *See also Koenig v. State,* 933 N.E.2d 1271, 1273 (Ind. 2010) ("in the context of a particular case, certain constitutional errors ... may have been 'harmless' in terms of their effect on the fact-finding process at trial"). Contrary to Dickerson's urging, there is simply no automatic reversal rule in these cases.[4]

Further, unlike the defendants in *Smith* and *Pigg,* we reiterate that Dickerson did not properly preserve the issue for appeal. As a result, Dickerson must show that allowing the confidential informant to testify anonymously at trial worked to his actual and substantial disadvantage, infecting and tainting the entire trial. *Akard v. State,* 924 N.E.2d 202. This he has not done.

The record reveals that the identity of the "anonymous witness" was well known to Dickerson. In fact, Dickerson had been friends with the witness, as well as the witness's girlfriend, for some time.[5] Moreover, defense counsel deposed the witness before trial. Thus, the witness was far from a "mere shadow in the defendant's mind." *Siegfriedt v. Fair,* 982 F.2d at 17.

Dickerson has not established that his defense was seriously hindered by the wit-

---

**3.** The Court explained:

> There may be good reason for preventing this line of inquiry on cross-examination such as a reasonable fear that the witness would be in danger. A determination of whether such information must be disclosed in the face of a relevancy objection should be made by the trial court after and in camera hearing, thus enabling the court to have available to it information upon which to make a meaningful decision. We review those decisions for an abuse of discretion, and the burden is on the party seeking the information to prove an abuse."
>
> *Id.*

Dickerson asserts that the State did not offer any fact-specific basis for its request to keep the witness's name anonymous while testifying. We initially observe that the State specifically indicated at the pretrial hearing that the witness had worked with the police department as a confidential informant on "several occasions", this case was his first, and "some or all of those [other] cases are still pending." *Transcript* at 24. Moreover, as noted above, Dickerson never objected to the limitation place on his cross-examination of the witness. Had he objected, the State and trial court would have been alerted to the need for a more detailed record in this re-

gard. Because the issue was not properly preserved, we make no representation as to the precise showing required to allow anonymous testimony at trial.

**4.** The First Circuit aptly explained:

> The long and the short of it is that the *Smith* standard has a core purpose: to prevent a criminal conviction based on the testimony of a witness who remains a mere shadow in the defendant's mind. . . .
>
> Against this backdrop, it is readily apparent that all pseudonyms are not equal in the eyes of the Confrontation Clause. Rather, courts must gauge the pull of *Smith* in any given case by the degree to which its rationale applies. Sometimes ... a witness's use of a fictitious name will transform him into a wraith and thereby thwart the efficacy of cross-examination. Other times, the use of a fictitious name will be no more than a mere curiosity, possessing no constitutional significance.
>
> *Siegfriedt v. Fair,* 982 F.2d 14, 17–18 (1st Cir.1992).

**5.** Dickerson testified that he often got together with the witness on the weekends to party and work on cars together and that this sometimes occurred at the witness's residence.

ness being identified at trial by number rather than name. Dickerson cross-examined the witness and specifically challenged his credibility with inconsistencies between the witness's trial and deposition testimony. The State's case against Dickerson was strong, and the testimony of the confidential informant played only a part in Dickerson's convictions. The buys were audio and video recorded and officers maintained visual surveillance during the first controlled buy and arrested Dickerson immediately following the second, finding him in possession of the buy money and other drugs. Further, Dickerson testified at trial and admitted delivering heroin to the confidential informant on both occasions and possessing the heroin and cocaine found in the vehicle at the time of the arrest.

Under the circumstances presented in this case, we conclude that the alleged error was at most harmless and certainly not fundamental.

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.