**Carlos Angel DURAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00045–CR.**

Court of Appeals of Texas,
El Paso.

Jan. 27, 1982.

Discretionary Review Granted
April 28, 1982.

Russell M. Aboud, Bruce J. Ponder, Alfonso Melendez, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., R. Bradford Stiles, Asst. Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C. J., and WARD and OSBORN, JJ.

OPINION

OSBORN, Justice.

The Appellant was convicted by a jury of delivering more than one-fourth ounce of marijuana to Antonio Aranda in violation of Section 4.05(d) of Article 4476–15, Tex.R. Civ.Stat. The Court assessed his punishment and ordered him to serve a term of six years.

The sole question on appeal is whether the trial Court erred in ruling Appellant could not cross-examine the police officer who conducted the surveillance operation as to his exact location during the period of such surveillance. Appellant claims he was denied his right to confront the witness against him as guaranteed by the Sixth

Amendment of the United States Constitution.

On September 27, 1978, ten officers of the El Paso Police Department conducted an operation to arrest those buying and selling drugs in South El Paso. Officer Alberto Nevarez was located in an area east of Florence Street, approximately 75 feet from the El Paso Boys' Club and the Armijo Center. Through the use of binoculars, he was able to observe the Appellant delivering baggies, which he believed to contain marijuana, to five or six different people in a period of less than one hour. He radioed the description of the purchasers to other officers in the general area, and they subsequently arrested three of those who obtained the baggies.

At the trial, Officer Nevarez testified as to his general location during the surveillance operation. He said he had a clear view of the people in front of the building where the exchanges took place. He used binoculars and said there was no obstruction to his view. He was able to obtain the license plate from one vehicle that stopped so its driver, Antonio Aranda, could purchase a baggie of marijuana before driving away. Appellant was arrested in the area where the sales had taken place.

On cross-examination, the Court limited Appellant's counsel to determining only the general vicinity where the officer was located during the surveillance operation. In order to protect those members of the public who had cooperated with the police operation, the Court would not permit counsel to develop the exact location where Officer Nevarez was located. The officer testified, on the State's motion to limit cross-examination, that he feared that those arrested might retaliate against those who assisted the police officer. This, of course, would reduce the effectiveness of future police operations.

In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court noted that the confrontation right guaranteed by the Sixth Amendment includes the right of cross-examination. To be effective, this right must provide an opportunity to impeach and discredit adverse witnesses. In the Davis case it was held to include the right to introduce evidence of a prior criminal conviction as a mode of impeachment.

The Court in both Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), recognized the right to determine on cross-examination the true identity of a witness by inquiring as to his real name and where he lives. The concurring opinion in Smith v. Illinois suggested the trial Court might curtail inquiries which tend to endanger the personal safety of the witness. But, that opinion notes that the State should make some showing why the information sought on cross-examination should not be furnished.

In Richardson v. State, 508 S.W.2d 380 (Tex.Cr.App.1974), the Court recognized that the scope of cross-examination is within the control of the trial judge in the exercise of his sound discretion. In its opinion, the Court found the Smith and Alford cases were not controlling as to the questions about the address of an undercover narcotics agent and the name of his wife, and the names and addresses of his associates. The denial was based, as in earlier cases noted by the Court in that opinion, upon grounds of security to those involved in a particular case.

We have found no case where the issue involves security, not as to a witness, but as to one who had assisted and cooperated with a witness engaged in surveillance operations. See Annotation, Right to Cross-Examine Witness as to His Place of Residence, 85 A.L.R.3d 541 (1978). In this case, if the owner of property had not permitted surveillance from his premises, no arrest and conviction would have resulted. Thus, the property owner played a vital part in the case, and, if the circumstances warrant, should be entitled to the same protection as the witness who testified in the Richardson case and was protected from disclosure of his residential address and other information.

But, in our case, there is the vital issue as to whether the witness could see the activi-

ty which he described from wherever he was located. This could be a critical issue in determining his credibility. The Court did require the witness to give his general location, his distance from the place where the sales were made, and the fact that he used binoculars in his surveillance. On a diagram, he even marked the general area where he was located so the jury would know whether he could, from that area, see the area where he described the sales of marijuana as having occurred.

We conclude that, within its discretion, the trial Court did properly protect the unidentified property owner who cooperated with the police, and did, at the same time, require sufficient answers to allow the jury the opportunity to see and know the witness's general location as a basis for the jury's consideration of the credibility of the police officer's testimony. The Appellant's Ground of Error No. One is overruled.

The Appellant was convicted of a third degree felony which is punishable by confinement from two to ten years. The Judge, in passing sentence, sentenced the Appellant to confinement in the penitentiary for six years. That part of the sentence is reformed to provide for confinement at not less than two nor more than six years in the penitentiary.

The judgment of the trial Court is affirmed and the sentence is reformed.