Ronald Leslie CASTLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 1218–86.

Court of Criminal Appeals of Texas, En Banc.

Feb. 10, 1988.

Rehearing Denied April 13, 1988.

Russell M. Aboud, El Paso, for appellant.

---

Steve W. Simmons, Dist. Atty. and Marissa G. Rogers and Robert Dinsmoor, Asst. Dist. Attys., El Paso, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of unlawful delivery of marihuana of less than two hundred pounds but more than fifty pounds. After being found guilty by the jury the court assessed punishment at five (5) years' imprisonment.

On appeal, the appellant, inter alia, posed one point of error in the form of a question. "Did the trial court infringe upon appellant's constitutional right of confrontation by exercising its discretion to restrict appellant's opportunity to cross-examine the main witness as to the witness's background, bias, and prejudice?"

The Court of Appeals viewed appellant's complaint as directed to the trial court's ruling on the State's motion in limine that the appellant was not to inquire into the witness Torino's aliases prior to January 1982 or after March 1983. The Court of Appeals found that Torino had been "copiously cross-examined" and his "bias and prejudice in the matter became patently obvious," that the witness had had threats made upon his life, and the trial court was careful in holding prohibition against cross-examination to a minimum to protect the witness, who was then under the Federal Witness Protection Program. The Court of Appeals overruled both of appellant's contentions and affirmed the conviction in an unpublished opinion. *Castle v. State* (Tex. App.–El Paso, No. 08–84–00321–CR—1986).

In his petition for discretionary review appellant's sole ground of review is "The Trial Court erred and infringed upon Petitioner's Constitutionally protected right of confrontation by exercising its discretion to restrict Petitioner's opportunity to cross-examine the prosecution's main witness as to the witness's background, bias, and prejudice."

In his petition the appellant noted the Court of Appeals held that the trial court "properly balanced the probative value of the evidence sought to be introduced against the risk its admission might entail," but claimed the Court of Appeals erred in basing this decision on the premise that there was ample evidence in the record to reflect a clear danger to the witness when "this case is totally devoid of any evidence that there was any present danger to Torino." We granted appellant's petition to determine the correctness of the Court of Appeals' opinion.

At the hearing on the State's motion in limine, John Torino, upon questioning by defense counsel,[1] stated that was his true name, and that between January 1982 when he came to El Paso through March of 1983 he did not use any alias, though his nickname was "Gino" not "Juan," that he had no arrest record or convictions under his own name or any other name. He also gave his birth date. It was revealed that at the time of the hearing (August 1984) he was a ward of the Federal Witness Protection Program because of death threats and two attempted "hits" upon his life as a result of other cases. He did admit that in the past he had used the alias of John Wayne Lavender but not John MacIntosh. A district attorney's investigator, Andrew Wilson, testified he checked the records of the El Paso Police Department and found no arrest or conviction records for John Torino or for a Juan Torino, or a Gino or Jeno Torino. The records were also negative for the names of John Wayne Lavender and Robert MacIntosh.[2] He also went to the Sheriff's office and checked on those names "through the NCIC and TCIC" and "everything came back negative." At the

---

1. Appellant was jointly tried with Jimmy Don Jarrell. Both defense counsel interrogated Torino at the suppression hearing.

2. Wilson stated he checked the record for "Robert" MacIntosh. Later defense counsel specifically asked Torino if he had ever used the alias of "John" MacIntosh and received a negative answer.

conclusion of the hearing on the motion in limine the court ruled only that the appellant could not, at any time, go into the aliases of Torino prior to January 1982 or after March 1983 when he entered the Federal Witness Protection Program. All other rulings sought by the State in its motion were denied and left to be raised during trial.

At the trial on the merits Torino was exhaustively cross-examined about the facts of the alleged offense. Further it was established on cross-examination that Torino was a former law enforcement officer with a police department although he didn't finish "the academy," that in 1979 he began to work with the DEA and FBI on cases, and at that time he was no longer a police officer. He worked on narcotic, organized crime and auto theft cases. Torino related he was paid for some cases, but there was no set fee or hourly rate. His work with the DEA and FBI was full-time but it was not his total means of support.

Torino related that he came to El Paso in December 1981 because he liked the place. His family was not from El Paso. At the time there were some pending cases on which he had worked but none in the El Paso area. He was not then being paid. He began working in El Paso at "The Place," a bar and lounge, as manager at $250.00 a week, and several months later he worked at the Barrell House Liquor Store for $200.00 a week. He gave the location of two El Paso apartments he lived in during 1982, the monthly rent for the first apartment and described the 1979 Trans Am automobile that he drove during 1982. Torino, in response to appellant's or co-defendant's questions, also stated that he married in July 1982 and that he had no children by the marriage. He also related the amount of his income for 1982 upon cross-examination.

Torino testified that in February 1982 he began working again with the DEA and FBI; that about June while working on federal cases "we got involved with the El Paso Police Department" and that he helped Officer Estrada on a case. Thereafter in June or July he worked with the said police department under Estrada's directions as well as with the DEA and the FBI; that from June to December 1982, he worked on four or five cases for the El Paso Police Department and on about 12 other cases outside of El Paso. He testified in court when that became necessary in all the cases he worked on.

Torino, who testified about the instant unlawful delivery of marihuana case and his work for the police in connection therewith, stated he received $500.00 for his work on the case a day or two after the arrest, that he didn't know in advance how much he would get and he would get no more in the event of a conviction. He further testified about federal procedures in paying for cases and in making buys. He told the jury, upon cross-examination, that he had been under the Federal Witness Protection Program since March 1983.[3] During the cross-examination appellant's counsel referred to Torino as the "federal snitch" and "a professional witness." And it appears that all the State's objections on cross-examination on the issue were overruled or withdrawn or no ruling was obtained. At no time during the cross-examination of Torino by appellant or his co-defendant Jarrell did the court move to restrict the cross-examination. The defense did inquire into some of Torino's background prior to January 1982. If appellant felt his cross-examination was being unduly restricted, he requested no relief from the limited ruling on the preliminary ruling on the motion in limine.

In his brief supporting his ground of review appellant argues he was prohibited from cross-examining Torino "concerning his previous occupation, his participation as an informant in the Federal Witness Protection Program; the fact that he was a

---

**3.** It became clear during cross-examination that Torino had not been in the Federal Witness Protection Program prior to 1982 as State's counsel had stated to the court at the time of the preliminary hearing. State's counsel had only been assigned to the case 10 days at the time. When it was established that Torino had not been in the "program" prior to 1982 appellant asked for no relief from any restriction imposed by the ruling on the motion in limine.

professional witness for law enforcement agencies in drug cases; and whether or not he had a financial interest in the outcome of appellant's trial."

As can be seen, the record clearly contradicts appellant's argument. He does not direct our attention where any such prohibition occurred during cross-examination. There were no bills of exceptions perfected or any refusals to permit such action. The only prohibition is found in the court's limited and preliminary ruling as to aliases, one, at least, of which was made known to the appellant. No effort was made to utilize this material or to demonstrate to the court that the limited ruling was wrong or that the probative value of any evidence sought to be elicited outweighed any risk its admission might entail. No effort was made to elicit Torino's current occupation, present residence, etc., which appellant complains he was prohibited from doing. And even now appellant fails to assert how the same was relevant and material.

Generally, the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion. *Toler v. State*, 546 S.W.2d 290, 295 (Tex.Cr.App. 1977). It has been held permissible within that discretion to limit cross-examination to prevent harm to the witness involved. *Duran v. State*, 631 S.W.2d 524 (Tex.App.–El Paso 1982), petition for discretionary review granted, affirmed per curiam, opinion unpublished (Tex.Cr.App.1984); *Saunders v. State*, 572 S.W.2d 944 (Tex.Cr.App.1978); *Richardson v. State*, 508 S.W.2d 380 (Tex. Cr.App.1974). Torino testified without dispute that he had received death threats and about two "hit" attempts, and it was shown he had been placed in the Federal Witness Protection Program in March 1983. Appellant is clearly wrong in saying the record is totally devoid of any evidence that there was any present danger to Torino. There was a sufficient basis for the Court of Appeals' finding that the trial court had acted properly. Likewise, we agree with the Court of Appeals that Torino's "bias and prejudice in the matter became patently obvious." The trial court did not abuse

its discretion in limiting the scope of cross-examination if it did. *Carmona v. State*, 698 S.W.2d 100 (Tex.Cr.App.1985). See also *United States v. Watson*, 599 F.2d 1149, 1157 (2nd Cir.1979) (rehearing on other grounds 690 F.2d 15); *United States v. Covallaro*, 553 F.2d 300, 304–306 (2nd Cir. 1977); *United States v. Pepe*, 747 F.2d 632, 656, fn. 33 (11th Cir.1984).

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

In support of a motion in limine an assistant district attorney represented to the trial court that the principal witness for the State, John Torino, was in the Federal Witness Protection Program prior to January 1982 and again beginning in February or March 1983. The El Paso Court of Appeals found that the State "averred that.... Torino was in the federal witness protection program prior to and after the instant offense (Torino was in the program prior to January, 1982, and after March, 1983; the offense took place in December, 1982)...." *Castle v. State* (No. 08–84–00321, delivered September 24, 1986), Slip Opinion, at 2. Yet, we now know from his own testimony that *Torino was not in the program prior to January 1982.*

The assistant district attorney particularized just what the State sought by its motion in limine, *viz:*

"We just want to put a block *FROM January of '82* to some time in February or March of 1983 as to going into his occupation, his whereabouts, his names."[1]

The Court of Appeals construed that to mean that "cross-examination should be limited to the period between Torino's participation in the program—cross-examination into background only being allowed from January, 1982 to March, 1983." *Castle v. State*, supra, Slip Opinion, at 2. However, my reading of the State's request is that it does not embrace a period of time "PRIOR" to January 1982. Rather, it requests an instruction that appellant

---

**1.** All emphasis is mine throughout unless otherwise noted.

not cross-examine Torino as to his occupation, whereabouts and names during the period from January 1982 until March 1983.

So on what basis did the judge rule that appellant would be precluded from any inquiry as to any matter PRIOR to January 1982? In its brief, at page 4, the State quotes one ruling: "You're restricted on the current aliases, plus aliases prior to January of '82." The State also adds, "Apparently the trial court also restricted cross-examination on matters that would lead to current identity." *Ibid.* In his opinion for the Court, Presiding Judge Onion says the ruling was limited to aliases, Slip Opinion, at 3; Judge Duncan says "identity or aliases," and points out that appellant did not question Torino "as to his identity, or whereabouts prior to 1982," Dissenting Slip Opinion, at 1.

In my view the trial court ruled out matters dehors the State's motion, on an erroneous assumption based on a faulty representation by the assistant district attorney that Torino was in the Federal Witness Protection Program before January 1982.[2] If he were not in the program there is no reason at all to deny the right of appellant to crossexamine Torino as to proper matters in being before January 1982.

In any event, the factual basis on which the El Paso Court of Appeals made its decision is shown to be incorrect. I would vacate its judgment and remand the cause to that court for reconsideration of appellant's first point of error. Because the majority does not, I respectfully dissent.

DUNCAN, Judge, dissenting.

In a pretrial Motion in Limine the State requested that the trial court prohibit the appellant from asking any questions of John Torino regarding his identity or aliases he used prior to January, 1982. In support of this request the State made the following statement to the court:

[Prosecutor]: Prior to January of '82, Your Honor, this individual was in the Federal Protective Service Witness Program, and shortly after the event [this offense] he re-entered that program. He was out of the program during the occurrence of these particular events alleged in this trial. We just want to put a block from January of '82 to some time in February or March of 1983 as to going into his occupation, his whereabouts, his names.

The appellant argued during the motion hearing and on appeal that such an order would effectively prevent him from investigating the witness' background prior to 1982 and restricted his right of cross-examination.

The trial court granted the State's Motion in Limine and the appellant did not question the witness as to his identity, or whereabouts prior to 1982.

The Federal Witness Protection Act, which is also known as the Witness Security Program, was originally established by Title V of the Organized Crime Control Act of 1970. See 18 U.S.C. prec. § 3481. The program was codified and revised by the Comprehensive Crime Control Act of 1984. 18 U.S.C. § 3521. The basic theory and principle purpose of the original Act was to protect the lives of witnesses in organized crime prosecutions. The later revisions, in addition to some necessary procedural changes, expanded the scope of the Act to include any witnesses.[1]

After one is admitted to the program "the Attorney General shall enter into a Memorandum of Understanding with that

---

2. That is not to say the assistant district attorney acted with any intent to deceive or to be unfair; however, that he "had only been assigned to the case 10 days at the time" is neither justification nor excuse, as the majority seems to suggest at page 4, note 3. It is clear that he had interviewed Torino in preparation for trial; more likely that Torino had worked in the past as an informant for the FBI and DEA led the prosecutor to conclude that he was formerly also in the

program. But the crucial point is that both trial judge and El Paso Court of Appeals understood and believed Torino had been in the program prior to January 1982.

1. See: Comment, *Organized Crime and Insulated Violence: Federal Liability for Illegal Conduct in Witness Protection Program,* 76 J.CRIM.LAW AND CRIMINOLOGY 208 (1985).

person." 18 U.S.C. § 3521(d)(1). This "Memorandum of Understanding" (MOU) details the respective responsibilities of the government and the protected person under the Act. Pertinent to this case, the statute requires "the agreement of the person not to commit any crime." 18 U.S.C. § 3521(d)(1)(B).

In the presence of the jury John Torino testified that on the date of this offense he was working with the El Paso Police Department as a "confidential source." In addition, he testified that he had been working with them since June or July, 1982, with the understanding "that if I came across anything that was worthwhile or in the narcotics area we felt—I felt that I could do something, I was to let them know, which time I did [sic]." He then testified to the facts of the delivery of the marihuana and his feigning arrest and a broken arm to avoid revealing himself as an informant.

Torino also testified that he was introduced to the El Paso Police Department Narcotics Division while he was working with the DEA and the FBI and that he had worked on other cases for the El Paso police prior to this case.

On cross-examination Torino testified he had worked for the DEA and FBI since 1979 and recounted extensively and in exhausting detail the facts of the delivery and conceded that he was the only witness to the illegal drug delivery. Consistent with the trial court's ruling on the State's Motion in Limine, the appellant made no inquiries about his identity or his whereabouts prior to January, 1982.

In *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), which for some reason is not cited in the majority opinion, the United States Supreme Court reviewed a situation quite similar to the one now confronting this Court. In *Smith* the appellant, who was charged with the

delivery of heroin, asked the government's witness if "James Jordan" was his real name. He admitted that it was not; however, in sustaining the government's objection, the trial court ruled that he did not have to provide his real name. Relying upon *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and conceding that the trial court's ruling did not constitute a complete denial of cross-examination, the court nevertheless stated as follows:

Yet when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' [footnote omitted] through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

The most evident distinction between *Smith v. Illinois, supra,* and the present case is that in *Smith* the government "gave no reasons justifying the refusal to answer a quite usual and proper question," *id.,* 390 U.S. at 134, 88 S.Ct. at 751; whereas, in this case the State claimed the witness' life would be jeopardized if his identity were revealed. This then becomes the essence of my dissent.

The Witness Protection Program specifically condemns a protected witness from violating the law. Torino was not a police officer when he purchased the marihuana from the appellant; thus, even if he had their authority he was technically and as a practical matter violating the law. Admittedly he would not be subject to prosecution because he was an employee of law enforcement. Nevertheless, he violated the terms of his agreement with the federal government.[2] Consequently, it appears

---

2. As a collateral but comparable point it should be observed that the federal government specifically prohibits parolees from performing as informants. The Conditions of Release, applicable to a federal parolee, as enacted by the Department of Justice, provide as follows: "The parolee shall not enter into any agreement to

act as an informer or special agent for any law-enforcement agency." 28 C.F.R. § 240(a)(7) (1985).

Although the analogy is not exact since Torino is not a federal parolee (which one actually does not know), the principle is still the same: the

to me that by his own overt, affirmative conduct Torino waived any right to claim anonymity.

To hold otherwise, as the majority evidently does, will authorize law enforcement agencies to utilize protected witnesses as undercover agents and at trial, as in this case, insulate their identity from discovery while simultaneously hindering an appellant's right of cross-examination.

In other words, it is inconceivable to me that the law will condone the manipulation of one's constitutional rights in this manner. There is no question that on occasion a constitutional right must be infringed, but only for a compelling reason. *Long v. State*, 742 S.W.2d 302 (Tex.Cr.App., 1987). To hold, as the majority implicitly does, that a witness, while under the Witness Protection Program, can voluntarily expose himself to additional danger by violating the law, and then claim the protection of the Act defies reason.[3]

In a number of cases this Court has commented that "[t]he animus, motive or ill-will of a prosecuting witness who testifies against the appellant is never a collateral or irrelevant inquiry ..." *Coleman v. State*, 545 S.W.2d 831, 832, 833 (Tex.Cr. App.1977). If, however, the appellant is not authorized to know the witness' identity then such an authorized inquiry is rendered impotent. In this case, the trial court's pretrial order "emasculated the [appellant's] right of cross-examination itself." *Smith v. Illinois*, supra.

If the foregoing analysis is not persuasive, a careful reading of the record makes it clear that the basis for the Court's ruling: Torino was in the Witness Protection Program prior to 1982, was not valid, despite the assurances of the State's attorney. Torino testified pertinently as follows:

> Q In fact, prior to 1982 and up until '83 and today, you're still under the Federal Witness Protection Program. Aren't you?

A What dates are you saying, sir?

Q I guess we were cut off prior to 1982 and up until 1983 and '84, you're under the wing of the Federal Protection, whatever they call that?

A No, sir, I was not.

Q You're not. You are now?

A Yes, sir.

Q But prior to 1982 you weren't?

A No, sir.

Thus, the court's ruling was factually erroneous.

I dissent.

TEAGUE, J., joins.

government does not want individuals it sponsors committing even "authorized" crimes.

**3.** One must distinguish between a protected witness that actively pursues a role as an informant witness and one that may inadvertently become a witness. In the latter instance his identity would obviously remain confidential.