In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00262-CR
______________________________


ALVIN DEWAYNE STRONG, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 282nd Judicial District Court
Dallas County, Texas
Trial Court No. F-0441117-TS


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Alvin Dewayne Strong appeals from his conviction for theft of a generator and level owned
by Matthew Sullivan. Five indictments were tried together. Strong pled guilty to the charges
pursuant to a negotiated plea agreement and was placed on five years' community supervision. The
trial court revoked Strong's community supervision and sentenced Strong to two years'
imprisonment. The cases have been appealed separately.
            Because the briefs and arguments raised therein are identical in all five appeals, for the
reasons stated in Alvin Dewayne Strong v. The State of Texas, cause number 06-05-00261-CR, we
likewise resolve the issues in this appeal in favor of the State.
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 10, 2006
Date Decided:             June 6, 2006

Do Not Publish




e of the Tyler office supervisor of the
Texarkana branch of the DPS. As a result of that investigation, Lee had resigned, being one of about
nine officers in the Texarkana office (including Lee's supervising sergeant) who had resigned as a
result of the investigation. Although the DPS officers were not required to maintain a quota or
"minimum contacts" with the driving public, those who met "certain numbers" had poor evaluations
by their superiors and the persons who received such poor evaluations received assignments which
were not always favorable. No criminal charges were ever filed against Lee as a result of this
investigation. Lee maintained that even though he had filed the false reports which had caused him
to resign his post with the DPS, he had a general reputation for trustworthiness; except for the
incidents of filing the "phantom" warning tickets, there was no evidence which contravened that
testimony. During the course of the hearing on the motion in limine, McMillon maintained that if
Lee is shown to have made false entries on reports to the DPS, then McMillon believed that this fact
was proper grist for the impeachment mill. 

 The trial court granted the State's motion in limine, prohibiting inquiry into or mention of
phantom tickets and Lee's resignation arising from the investigation surrounding them. On appeal,
McMillon maintains that the evidence of the attribution of the cause of the collision and the details
concerning it were uniquely derived from expert testimony given by Lee and the conclusions at
which he arrived as a result of his investigation of the crash and, further, that Lee's assessment
concerning McMillon's impairment due to the use of drugs was critical. Therefore, positing that the
intended impeachment evidence concerning Lee's filing of false reports with the DPS would have
undermined Lee's credibility with the jury, McMillon claims harm from this error.

STANDARD OF REVIEW

 The Sixth Amendment to the United States Constitution guarantees the right of an accused
in a criminal prosecution to be confronted with the witnesses against him. The United States
Supreme Court has long recognized that this Sixth Amendment protection is a fundamental right and
is made obligatory on the States by the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400,
403-04 (1965). However, although the Sixth Amendment guarantees the right to confront witnesses
(which includes the right to cross-examine witnesses to attack their general credibility or to show
their possible bias, self-interest, or motives in testifying), (1) this right is not an unqualified one, the
trial judge having wide discretion in limiting the scope and extent of cross-examination. Delaware
v. Van Arsdall, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude" under the
Confrontation Clause to impose restrictions on cross-examination based on such criteria as
"harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive
or only marginally relevant."); Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); Castle
v. State, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988) ("Generally, the scope of cross-examination
is within the control of the trial court and in the exercise of its own discretion."); Toler v. State, 546
S.W.2d 290, 295 (Tex. Crim. App. 1977). Each Confrontation Clause issue must be weighed on a
case-by-case basis, carefully taking into account the defendant's right to cross-examination and the
risk factors associated with admission of the evidence. Lopez, 18 S.W.3d at 222. 

 An appellate court may not disturb a trial court's evidentiary ruling absent an
abuse of discretion. In other words, as long as the trial court's decision was within
the zone of reasonable disagreement and was correct under any theory of law
applicable to the case, it must be upheld. Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on reh'g); Calloway v. State, 743 S.W.2d 645, 651-652
(Tex. Crim. App. 1988). This is so because "trial courts . . . are usually in the best
position to make the call on whether certain evidence should be admitted or
excluded." Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).


Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). 

 In making a ruling on the motion in limine, the trial court had to consider the Texas Rules
of Evidence. The portion of the Rules which most strongly favors the admissibility of the evidence
which was barred is Rule 611(b), which states, "A witness may be cross-examined on any matter
relevant to any issue in the case, including credibility." Tex. R. Evid. 611(b). McMillon also cites
us to Rule 608(a)(1), which says in part, "The credibility of a witness may be attacked or supported
by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence
may refer only to character for truthfulness or untruthfulness." Tex. R. Evid. 608(a).

 McMillon's reliance on Rule 608(a)(1) overlooks the existence of the constraint on the use
of such evidence as contained in part (b) of the same Rule, which says, "Specific instances of the
conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than
conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the
witness nor proved by extrinsic evidence." Tex. R. Evid. 608(b).

 The right of confrontation means more than just being allowed to confront the witness
physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by
it is the right of cross-examination." Douglas v. Alabama, 380 U.S. 415, 418 (1965). In Davis, 415
U.S. 308, 315 (1974), the United States Supreme Court held that to refuse to allow cross-examination of a witness about a juvenile probation which had not expired so as to show motive and
bias because of possible pressure upon the witness by the prosecution violated the accused's right
to confrontation. The rationale in that case was that the existing probationary status of the witness
gave the witness a reason for fabrication so as to garner favor with those overseeing him. 

 The introduction of evidence of a prior crime is . . . a general attack on the credibility
of the witness. A more particular attack on the witness' credibility is effected by
means of cross-examination directed toward revealing possible biases, prejudices, or
ulterior motives of the witness as they may relate directly to issues or personalities
in the case at hand. 

Id. It is important to note that the Texas Court of Criminal Appeals observed that the United States
Supreme Court in Davis "repeatedly distinguished between the use of a prior conviction merely to
show lack of truthful character and its use to show bias or motive." Bilbrey v. State, 594 S.W.2d
754, 757 (Tex. Crim. App. [Panel Op.] 1980). 

 In addition to the constraints on admission set out above, the trial court also has the authority 
to weigh proposed evidence and exclude it (even if relevant) "if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

 During the hearing on the State's motion in limine to exclude mention of the "phantom"
tickets issued by Lee and his resignation from the DPS related to that action, McMillon emphasized
repeatedly that he believed the actions taken by Lee reflected on his general trustworthiness. 
McMillon's position on appeal reflects that same reasoning as the basis for admission of that
evidence as the proper grounds for impeachment. Nothing was argued or shown that the actions
taken by Lee regarding the phantom tickets would demonstrate his bias or that his prior bad act
provided him a motive to lie in this case. In other words, McMillon failed to make any connection
between Lee's admitted misconduct and either a motive for Lee to testify untruthfully in this case or
to show how that conduct would demonstrate that Lee harbored any bias against McMillon which
would taint Lee's conclusions or his testimony.

 In a rather old but somewhat similar case, a testifying police officer had previously filed a
false report in a vice undercover operation (the officer had said he did not hear a gunshot when, in
fact, he did). As a result of having made the false report, the officer was suspended without pay for
fifteen days and transferred from the vice squad to the traffic section. The defendant proposed that
in his case (wherein the officer was testifying about having witnessed the defendant engaged in
public lewdness), the officer might be falsifying his story--as in the previous circumstance--in order
to curry favor with his superiors; in other words, there was a motive to lie and the officer's prior
history showed a propensity to do so. The trial court, while observing the fact that "[g]reat latitude
should be allowed the accused to show a witness' bias or motive to falsify his testimony," also noted
that "trial courts have considerable discretion as to how and when bias may be proved and as to what
collateral evidence is material for that purpose." Cloud v. State, 567 S.W.2d 801, 802 (Tex. Crim.
App. [Panel Op.] 1978). The impeachment evidence was held to have been properly excluded.

 A witness's general character for truthfulness may be shown only through reputation or
opinion testimony. "A witness's general character for truthfulness or credibility may not be attacked
by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of
untruthfulness. . . . Our state evidentiary rules frown on unnecessary character assassination." 
Hammer v. State, No. PD-0786-08, 2009 Tex. Crim. App. LEXIS 513, at *17-18 (Tex. Crim. App.
Apr. 8, 2009).

 The attempt to use the instance during Lee's career in which he wrote "phantom" warning
citations was nothing more than an instance of wrongdoing in his life and was not shown to bear on
his general reputation for truthfulness. There was nothing which revealed that this singular act of
wrongdoing would create a bias on the part of Lee against McMillon or cause Lee to have a motive
to testify untruthfully in this case. Accordingly, it was properly barred as impeachment testimony. 

 We affirm.




 Bailey C. Moseley

 Justice


Date Submitted: July 31, 2009

Date Decided: August 12, 2009


Publish



1. Davis v. Alaska, 415 U.S. 308, 316 (1974).