# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00514-CR

**Teodoro Sosa, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-05-300497, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Teodoro Sosa was charged with indecency with a child by contact.  *See* Tex. Penal
Code Ann. § 21.11(a)(1) (West Supp. 2009).  A jury found him guilty of the offense and assessed
punishment at ten years' confinement, but recommended that the sentence be suspended and that
Sosa be given ten years' community supervision.  The trial court entered judgment on the verdict and
placed Sosa on community supervision.  Sosa appeals from the judgment of conviction, arguing that,
by excluding certain evidence, the trial court denied him his constitutional right to be confronted
with the witnesses against him.  *See* U.S. Const. amend. VI.  We affirm the judgment of conviction.

## BACKGROUND

In late 2004 and early 2005, K.F., the complainant in this case, was staying with her
family at Sosa's home in Austin for the holidays, as Sosa's brother, Carlos Sosa, was married to

K.F.'s mother, E.F.[1]  On the evening of January 1, 2005, Sosa's wife accompanied E.F. and Carlos

to downtown Austin, leaving Sosa to supervise the eleven-year-old K.F., as well as her younger

brother and Sosa's own two children.

At trial, K.F. testified that at some point while her mother and stepfather were gone,

she and Sosa went to the garage to retrieve a box for her puppy.  The two of them then went to the

laundry room, where they placed the puppy in the box.  According to K.F., while she was alone with

Sosa in the laundry room, he asked her if she "had boobs."  K.F. testified that she answered, "I don't

know," and Sosa asked her to "do a pose for him."  When K.F. refused, Sosa asked if he could see

and touch her breasts.  K.F. testified that she refused again, then left the laundry room because she

was uncomfortable with Sosa's questions.  A short time later, Sosa called her to the living room and

asked her to sit on his lap.  K.F. explained that she felt "kind of weird" about this request, but

complied.  K.F. testified that while she was sitting on Sosa's lap, he held her tightly around the

stomach with one hand and began touching her breasts in a circular motion with the other hand.  K.F.

stated that this touching occurred both over and under her clothing.  She further testified Sosa was

holding her so tightly that she could not get away, so she eventually told him she needed to go to the

restroom in order to escape.  K.F. then ran to the bathroom and locked the door.  She testified that

when she emerged from the restroom, "[Sosa] told me that it was . . . an accident, that he didn't mean

to touch me, and that that is how he plays with [his daughter, J.S.,] and her friends.  I told him no,

that that was bad, because that is—he wasn't tickling me."  K.F. further testified that Sosa warned

her that if she told her mother about the touching, "the family would come apart and they wouldn't

---

[1]  To avoid confusion, we will refer to Carlos Sosa by his first name.

be together." According to K.F., Sosa then asked his daughter, J.S., to speak to her about the incident. K.F. testified, "J.S. comes and tells me that her dad said that he is sorry and that he didn't mean to touch me."

Sosa's testimony presented a different version of the events of January 1, 2005, although several details were consistent with K.F.'s testimony. According to Sosa, he asked K.F. to put her puppy in a box because it was not house-trained and had been relieving itself inside the house. He then accompanied K.F. to the garage to show her where she could find a box. Sosa testified that he walked with K.F. to the laundry room and placed the puppy in the box, causing K.F. to become angry with him because she did not want to leave her puppy alone. According to Sosa, he then called K.F. to the living room and sat her on his lap in order to comfort her. Sosa testified that he tickled K.F. as she tried to get up from his lap, stating, "[S]he tried to move, and I said [K.F.], you listen to me and I grabbed my hands like this, around her like this, and . . . she start trying to get up from me, I do like this and I tickle her like this . . . ." K.F. then got up from Sosa's lap and ran to the bathroom and began to cry. Sosa testified that he asked her why she was crying and she answered, "Because you touch my boobs." Sosa stated that he immediately denied this accusation and began trying to reach E.F. on the phone.[2] Sosa denied telling his daughter that he had touched K.F. by accident, but stated that he explained K.F.'s allegations to J.S. and she immediately responded, "No, [K.F.], my daddy never do that." At trial, Sosa took the position that K.F. lied about him touching her breasts because she was angry about her puppy being confined to the laundry room.

---

[2] K.F. also testified that Sosa made several phone calls to her mother before finally reaching Carlos and requesting that the other adults return to the house.

3

Both Sosa and K.F. testified that when E.F., Carlos, and Sosa's wife returned to the house, K.F. immediately told E.F. that Sosa had touched her breasts. E.F. testified that when she arrived at the home, Sosa was pale and sweating, and that "he was trying to talk over [K.F.], he wouldn't let her talk, he was saying—he was trying to excuse himself, saying that it was a mistake." E.F. further testified that she immediately believed her daughter's allegations. E.F., K.F., Carlos, and K.F.'s brother then left Sosa's home and went to a hotel. E.F. testified that she left without a confrontation, but Sosa and his wife both testified that E.F. became angry, throwing and breaking a glass religious object before leaving the house.

K.F. and her family returned to their home in Del Rio the next day, and on January 4, 2005, E.F. reported the touching incident to counselors at a family violence center. The counselors in turn contacted the Austin Police Department, leading to Sosa's arrest for indecency with a child by contact.

At trial, defense counsel attempted to introduce an audio cassette tape that allegedly contained a recording of E.F. screaming at K.F. and calling her derogatory names. The defense's theory was that K.F. lied about the touching because she was angry with Sosa, and then remained committed to her original story because she was afraid to tell her mother that she had lied. After both K.F. and E.F. testified that K.F. had a good relationship with her mother and was not afraid of her, the defense sought to admit the tape recording as impeachment evidence. The tape was played outside the presence of the jury, and E.F. denied that it was her voice on the recording. The trial court excluded the tape on the grounds that it was not properly authenticated and that its probative value was outweighed by the risk of unfair prejudice. *See* Tex. R. Evid. 403.

4

Defense counsel also sought to cross-examine the State's expert witness on child abuse about certain reports from Child Protective Services ("CPS") involving prior allegations of abuse in which K.F. was the victim. The trial court sustained the State's objection to this line of questioning and ruled that any evidence of prior allegations of abuse would have to be presented outside the presence of the jury for a ruling on its admissibility. Defense counsel indicated to the trial court that there were witnesses who could testify regarding prior allegations of abuse by K.F., but no such witnesses were ever called.

After hearing the evidence, the jury found Sosa guilty of indecency with a child by contact and assessed punishment at ten years' imprisonment, but recommended that the sentence be suspended and Sosa be put on ten years' community supervision. The trial court entered judgment on the verdict and placed Sosa on community supervision. Sosa's motion for new trial was overruled, and this appeal followed.

In a single issue on appeal, Sosa argues that by excluding the evidence of prior allegations of abuse and the cassette tape, the trial court deprived him of his right to fully cross-examine the witnesses testifying against him.

## STANDARD OF REVIEW

The Sixth Amendment guarantees the right to confront witnesses, which includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. U.S. Const. amend. VI; *see Davis v. Alaska*, 415 U.S. 308, 316 (1974). However, the trial court has wide discretion under the Sixth Amendment to impose restrictions on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986);

5

*Castle v. State*, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988). Thus, the standard of review for an alleged violation of the right to confront a witness is abuse of discretion. *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). "[T]he trial court exceeds its discretion only when it prohibits a defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Id.* Most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence, as the right to present evidence and cross-examine witnesses under the Sixth Amendment generally does not conflict with the corresponding rights under state evidentiary rules. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). In the rare event of a conflict, the Confrontation Clause prevails. *Id.*; *see also* Tex. R. Evid. 101(c). We may not disturb a trial court's ruling under the rules of evidence absent an abuse of discretion. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

**DISCUSSION**

*Prior Allegations of Abuse*

Sosa argues that the trial court violated his rights under the Sixth Amendment by not permitting him to cross-examine the State's expert about prior allegations of abuse made by K.F. Sosa claims that the expert had received information from the State regarding these prior allegations, and that, given the opportunity to fully cross-examine the expert, he could have impeached K.F. with evidence of her "habit" of making false allegations when angry.

Texas Rule of Evidence 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be inquired into on cross-examination of the witness

6

nor provided by extrinsic evidence." Tex. R. Evid. 608(b). The court of criminal appeals has held

that while there is no per se exception to Rule 608(b) for sexual offenses, the Confrontation Clause

occasionally may require the admissibility of evidence that the rules of evidence would exclude.

*Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). Thus, it is necessary to balance the

probative value of the evidence sought to be introduced against the risk that its admission may entail.

*Id.* at 222. In *Lopez*, the court held that where a prior allegation of abuse was not shown to be false

and where it involved physical abuse rather than sexual abuse, its probative value was outweighed

by the risk that it would unduly prejudice and confuse the jury. *Id.* at 226 ("Without proof that the

prior accusation was false or that the two accusations were similar, the evidence fails to have any

probative value in impeaching [the complainant's] credibility in this case.").

The record indicates that Sosa sought to question the State's expert on two CPS

reports involving physical abuse of K.F.[3] A prior report of physical abuse is not sufficiently similar

to an allegation of sexual abuse to have any probative value, particularly given the risk that such

evidence would unduly prejudice and confuse the jury. *See id.* at 226. Furthermore, the record

contains no evidence of the circumstances surrounding the making of these reports, including

whether they were made by K.F. or someone else. Because Sosa made no offer of proof regarding

the CPS reports in question, there is nothing for this Court to review. *See* Tex. R. Evid. 103(a)(2)

---

[3] Defense counsel asked the expert if he had been provided with copies of the two CPS reports, to which the expert responded that he had not. A discussion was then held at the bench, in which the State explained that the CPS reports in question were "investigations of physical abuse by other relatives, not the mom, that were ruled out."

7

(error may not be predicated upon exclusion of evidence where substance of evidence was not made known to court and was not apparent from context within which questions were asked).

After the expert's testimony, the trial court allowed defense counsel to conduct a brief voir dire of E.F., during which time he asked her if she was aware that K.F. had made two prior allegations of sexual abuse. E.F. denied having knowledge of any prior reports. Sosa presented no competent evidence that any such allegations were actually made, or if made, that those allegations were false.[4]

Sosa now argues that the trial court prevented him from cross-examining the State's expert on not only the two CPS reports of physical abuse, but also the two prior allegations of sexual abuse. According to Sosa, the prior sexual abuse allegations were admissible to show K.F.'s motives for testifying and her habit of making false accusations. *See* Tex. R. Evid. 404(b) (evidence of prior bad acts is admissible as proof of motive), 406 (evidence of habit is relevant to prove that conduct of person on particular occasion was in conformity with habit). However, Sosa did not establish that the State's expert had knowledge of any prior allegations of sexual abuse or that he could have testified to their existence. *See* Tex. R. Evid. 103(a)(2); *see also Love v. State*, 861 S.W.2d 899, 902 (Tex. Crim. App. 1993) ("[E]ven if cross-examination is limited by the trial court, nothing is presented for review if there is no proof what the testimony would have been . . . ."). Further, even if the substance of the excluded testimony had properly been presented for review, the risk of unfair prejudice greatly outweighs its probative value, as Sosa presented no evidence that any previous

_____

[4] After E.F. denied knowledge of any previous reports, defense counsel represented to the trial court that he had a witness who would testify that he had been falsely accused of touching K.F. inappropriately. The trial court stated that any testimony to that effect would need to be presented outside the presence of the jury to obtain a ruling on its admissibility. The defense made no further attempts to offer evidence regarding prior sexual abuse allegations.

allegations of sexual abuse by K.F. were actually false. *See Lopez*, 18 S.W.3d at 226 (requiring proof of falsity before evidence of prior abuse allegations can be probative).

Because Sosa has presented nothing for review regarding the testimony he sought to elicit on cross-examination and because he failed to establish that any prior allegations of abuse were both false and similar in nature to the allegations at issue here, *see id.*, we hold that the trial court did not abuse its discretion in excluding such evidence.

*Tape Recording*

Sosa also argues that the trial court violated his rights under the Sixth Amendment by not permitting him to impeach E.F. with an audio tape that allegedly contained a recording of her yelling at K.F. and calling her derogatory names. According to Sosa, this recording was relevant to his theory that K.F. was maintaining her story about the touching incident because she was afraid to tell her mother that she had lied. Sosa argues that the recording was admissible to impeach K.F. and E.F., both of whom testified that they had a good relationship.

Sosa initially attempted to play the tape during cross-examination of E.F., leading the State to object on relevance grounds. *See* Tex. R. Evid. 402. The trial court then allowed the tape, which is entirely in Spanish, to be played and translated outside the presence of the jury. The interpreter explained to the trial court that it was difficult to understand the voices on the tape, but translated a portion of the tape that included a woman's voice using derogatory terms, including racial slurs, in reference to a girl.[5] The recording was played for E.F., who denied that it was her

_____

[5] The interpreter explained that the speaker was using Spanish words that indicated she was talking to a young female.

9

voice on the tape. Sosa presented no evidence regarding the time or manner in which the tape was made. The trial court excluded the tape based on lack of proper authentication and the fact that its probative value was outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). Sosa argues that the tape could be authenticated under Rule 901(b)(5), which provides that a recorded voice may be authenticated "by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker." *See* Tex. R. Evid. 901(b)(5). However, E.F. denied that the voice on the tape was hers, and Sosa presented no evidence to the contrary. Furthermore, Sosa produced no evidence as to how, when, or by whom the tape was made. As the trial court stated in excluding the evidence, "[T]here is no offering witness that . . . anybody has offered to testify as to any of the circumstances concerning the making of the tape, who made it, when it was made, under what circumstances it was made, whether it was accurately made, whether it was pieced together or whether it was just one conversation." Given the lack of evidence that the tape was in fact what Sosa claimed it to be, we hold that the trial court acted within its discretion in determining that the recording's authenticity had not been sufficiently established to allow its admission into evidence. *See* Tex. R. Evid. 901(a).

Even if the tape had been properly authenticated, the trial court also ruled that the probative value of the recording was outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Allowing the jury to hear a tape recording of someone, allegedly K.F., yelling at her

10

young daughter and calling her derogatory names, including racial slurs, presented a significant risk of unfair prejudice and confusion of issues. The probative value of the recording was limited, as it was offered in support of Sosa's theory that K.F. was afraid to tell her mother that she had lied about the sexual abuse. The trial court had already permitted the defense to explore this issue in other testimony, as both Sosa and his wife were allowed to testify that E.F. frequently mistreated K.F. by yelling at her and calling her names. Thus, even if the tape had been properly authenticated, we cannot conclude that the trial court abused its discretion in determining that its probative value was outweighed by the risk of unfair prejudice.

In light of the foregoing, we hold that the trial court's exclusion of (1) testimony regarding prior allegations of abuse and (2) the audio tape recording did not prevent Sosa from being confronted with the witnesses against him in violation of the Sixth Amendment.

## CONCLUSION

We affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: June 10, 2010

Do Not Publish

11