# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00354-CR

**Kyle Wayne Frasier, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 35164, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kyle Wayne Frasier of the offense of possession of a controlled substance, methamphetamine, in the amount of four grams or more but less than 200 grams, with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2010). Punishment was assessed at thirty years' imprisonment. In two issues on appeal, Frasier asserts that the chain of custody for the controlled substance was not established and that the district court abused its discretion in denying Frasier's motion for continuance. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that in the early morning hours of March 5, 2008, Officer Ricky Bindseil of the Marble Falls Police Department observed Frasier's vehicle speeding and initiated a traffic stop. Bindseil testified that during the stop, he asked Frasier, who was a suspect in an ongoing narcotics investigation, and two other occupants to step out of the vehicle.

Bindseil then directed his narcotics-sniffing police dog, Ringo, to sniff the exterior of the vehicle for drugs. According to Bindseil, Ringo gave a "positive alert" for the presence of narcotics at the front passenger side of the vehicle, where Frasier had been sitting. Bindseil then searched that area of the vehicle and found a brown bag located on the floorboard. Inside the bag, Bindseil testified, were a container of "Wet Ones," a camouflage bag, three digital scales, a bag of baggies, a pouch, a lighter, a knife, and a small spoon.

Bindseil testified that he delivered the bag "straight to Sergeant [Brent] Nichols" of the Marble Falls Police Department, who was leading the narcotics investigation and who had since arrived at the scene. Nichols testified that he opened the "Wet Ones" container and found two bags inside containing a white, crystalline substance that he suspected was methamphetamine. After examining the evidence, Nichols then secured and delivered the items to the Special Operations Unit in Marble Falls and "dropped them in evidence lockup to secure them overnight until I could process them the next day." According to Nichols, the evidence had not been in the custody of anybody other than himself and Bindseil prior to Nichols "dropping it through the chute" at lockup. The next day, Nichols recalled, the two bags containing the suspected methamphetamine were sealed for transport to the DPS crime lab. According to Nichols, the evidence was delivered to the crime lab by Officer Homer Wallace, who did not testify at trial. At the crime lab, the substance in the bags was tested by DPS chemist Joel Budge. Budge testified that the substance tested positive for methamphetamine and that the net weight of the substance was 27.63 grams in one bag and .10 grams in the other.

Other evidence admitted at trial tended to show that Frasier had intent to deliver the methamphetamine, including the testimony of Deputy Kevin Neal of the Burnet County Sheriff's Office. Neal, who had transported Frasier from the Burnet County jail to the Comanche County jail in May 2008, testified that during the transport, he had overheard a conversation between Frasier and another inmate, Zachary Hoffman. According to Neal, Frasier was arguing with Hoffman about "who could sell the most dope around Marble Falls."

The jury convicted Frasier of possession of methamphetamine with intent to deliver, and, following a punishment hearing, Frasier was sentenced to thirty years' imprisonment. This appeal followed.

## ANALYSIS

### Chain of custody

In his first issue, Frasier contends that the State "failed to establish a complete chain of custody for the controlled substance involved in this case in that no items were marked by the Officer who first retrieved them." Frasier specifically complains of the State failing to call as a witness Homer Wallace, the police officer who had delivered the evidence to the crime lab. Frasier asserts that "the State failed to establish that evidence seized by Officer Bindseil was the same evidence that was taken to the lab by Homer Wallace." Accordingly, in Frasier's view, the district court should not have admitted the evidence. Frasier further contends that the district court should have permitted him to cross-examine Officer Nichols on "allegations of numerous irregularities in the evidence locker at the Marble Falls Police Department."

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). "The sufficiency of the predicate [for admitting evidence] is also within the sound discretion of the trial court." *Davis v. State*, 992 S.W.2d 8, 11 (Tex. Crim. App. 1996). The trial court does not abuse its discretion unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

"[A]lthough the evidentiary rules do not specifically address proper chain of custody, they do state that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims." *Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007) (citing Tex. R. Evid. 901(a)); *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). This can be accomplished by testimony from a witness with knowledge that an item is what it is claimed to be. *See* Tex. R. Evid. 901(b)(1). If the party seeking admission of evidence is not able to identify the "physical evidence through distinctive markings or the like, or if the evidence is fungible, as are drugs or test results," proof of chain of custody is required. *Davis*, 992 S.W.2d at 10-11. When the State shows the beginning and the end of a chain of custody, any intermediate gaps go to the weight rather than the admissibility of the evidence, particularly if the chain of custody ends at a laboratory. *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In this case, Officer Bindseil testified that he did not place any identifying marks on the evidence after he had seized it. At that point, the district court sustained Frasier's objection to the chain of custody. However, Bindseil also testified that he had delivered the evidence "straight

4

to Sergeant Nichols," and the district court allowed the State to establish the chain of custody through that witness. Nichols testified that after Bindseil gave him the container that contained the suspected methamphetamine, he "took the suspected narcotics from it, packaged them separately and dropped them in the special operations unit evidence lockup." This was done, Nichols explained, "to secure [the suspected narcotics] overnight until I could process them the next day." Prior to dropping the evidence in lockup, Nichols testified, the evidence had not been in the custody of anyone other than himself and Bindseil. And, although Nichols testified that he did not place any identifying marks on the "external package" in which the suspected methamphetamine was transported to the crime lab, he explained that he had marked with his initials "the package that contain[ed] the suspected methamphetamine." When this package was offered into evidence, Nichols testified that he recognized it as the "bag . . . that contains suspected methamphetamine to be submitted to DPS for analysis." On the day after he had dropped the evidence into lockup, Nichols recalled, he "requested the evidence back from [the evidence custodian] so I could process it to be sent to the lab." Nichols then sealed the bag containing the suspected narcotics, placed the "proper documents on it, and placed it back into the evidence lockup." The evidence was then transported by Officer Wallace to the DPS Crime Lab, where it was analyzed, and then returned to evidence lockup. Nichols confirmed that he had retrieved the evidence from lockup that morning prior to his testimony. When Nichols identified the evidence bag in court, he observed that the "lab analysis number [on the bag] is L-372016." Nichols's identification was consistent with that of the DPS chemist, Budge, who testified that he had performed an analysis on the substance that

5

had been assigned the laboratory case number of "L-372016." The substance, Budge testified, tested positive for methamphetamine.

We conclude that the above evidence is sufficient to support a finding by the district court that the suspected methamphetamine was what the State claimed it to be. *See* Tex. R. Evid. 901(a). There were some potential problems with the chain of custody, including, as Frasier observes, Officer Bindseil's failure to place identifying marks on the evidence and the fact that the officer who had transported the evidence to the crime lab, Homer Wallace, did not testify. However, absent evidence of tampering or other fraud, which was not presented here, problems in the chain of custody do not affect the admissibility of the evidence. *See Druery*, 225 S.W.3d at 503. Instead, such problems affect the weight that the factfinder should give the evidence, which may be brought out and argued by the parties, as was done in this case. *See id*. at 503-04. On this record, we cannot conclude that the district court abused its discretion in admitting the evidence.

As for the district court's decision not to permit Frasier to cross-examine Nichols concerning alleged irregularities at the evidence locker, it is well settled that a trial court has wide discretion in limiting the scope and extent of cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("trial judges retain wide latitude" under Confrontation Clause to impose restrictions on cross-examination based on such criteria as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant"); *Castle v. State*, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988) ("Generally, the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion."). Frasier's counsel wanted to question Nichols concerning counsel's "understanding that Homer Wallace [had] accused

6

Brent Nichols of taking drugs from the evidence locker." Before ruling on counsel's request, the district court asked counsel, "Do you have any information that it had anything to do with this case?" Counsel responded, "They're not going to let me go looking around in the Marble Falls PD. That information, plus the fact that there was this federal lawsuit filed which I believe mentions that, that's all the information I have." The State then remarked, "That just seems far too remote to try to go into," and, "I just don't think it's specific enough." The district court agreed, and did not allow counsel to proceed with that line of questioning. Later, at the close of the State's evidence, counsel re-urged his request. Counsel claimed that he had asked a reporter from KXAN "what she had on the investigation." According to counsel, the reporter "faxed me her notes and her story—or email that—and in there, there were allegations by Homer Wallace that Brent Nichols had taken drugs out of the evidence locker. I'm going to ask him about that."[1] The district court again denied the request.

We cannot conclude that the district court's decision was outside the zone of reasonable disagreement. Whatever accusations Wallace may have made against Nichols, there is no indication in the record that the accusations related to the evidence in this case or that the accusations had any merit. The district court could have also found that allowing the questioning could have needlessly delayed the trial, as the State likely would have felt compelled to present contrary evidence refuting the accusations. Thus, the district court would not have abused its discretion in concluding that whatever marginal relevance the questioning may have had was

---

[1] Whatever information may have been provided to counsel by the reporter, it does not appear in the record before us.

7

substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or considerations of undue delay. *See* Tex. R. Evid. 403.

We overrule Frasier's first issue.

**Motion for continuance**

In his second issue, Frasier asserts that the district court abused its discretion in denying Frasier's request during trial for a continuance. Frasier claims that a continuance was needed "because of the State's failure to reveal the existence of potential witnesses, Kevin Neal and Zach Hoffman, within ten days prior to trial" as required by local rules.[2] According to Frasier, "he was surprised by the testimony of Neal and did not have enough time to locate Zach Hoffman as a potential witness to rebut Kevin Neal's testimony."

It is undisputed that Frasier was notified of "additional discovery," including the testimony of Neal, via fax at 4:56 p.m. on May 15, 2009, the Friday before trial. In response, Frasier's counsel filed a motion asking the district court to exclude the evidence or, in the alternative, "grant a continuance in this matter so that the defendant can get this information and have ample time to review this new evidence." In a hearing on May 18, the day the trial was scheduled to begin, the district court denied the motion to exclude but agreed to "delay the trial for a day." However, the district court added, "I'm not going to just continue it to a whole new trial setting."[3]

---

[2] *See* 33rd and 424th (Tex.) Dist. Cts. Standing Order on Criminal Case Docket Control, p. 5 of 8, available at http://dcourt.org/forum/files/downloads/StandingOrderCrimDocketControl.pdf (last visited July 8, 2010).

[3] On appeal, Frasier does not complain of the district court's pretrial ruling.

The trial began the following day. However, the State did not present the testimony of Neal until the second day of trial, on May 20. During a bench conference prior to Neal's testimony, Frasier's counsel again sought a continuance. This time, counsel argued that in order to refute Neal's testimony regarding the conversation between Frasier and Hoffman that Neal had allegedly overheard, he needed to call Hoffman (who was apparently an inmate in TDCJ at the time of trial) as a witness. The district court denied the request for a continuance. Counsel then requested "permission to try to get Zach Hoffman on the telephone and let him testify by phone in front of the jury." The district court agreed to this request, and the trial resumed. After the defense rested, counsel informed the district court that he had been unable to contact Hoffman and requested "permission to reopen and to continue the case so that I can locate that important, crucial witness." The district court again denied the request for a continuance.

We first observe that Frasier's request for a continuance during trial was oral. No written motion was filed. The code of criminal procedure provides that "[a] criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." Tex. Code Crim. Proc. Ann. art. 29.03 (West 2006). Additionally, "all motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id*. art. 29.08 (West 2006). The court of criminal appeals has construed these provisions to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance. *See Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). "Thus, if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain

9

about the judge's ruling on appeal." *Id*. We conclude that Frasier has failed to preserve error on the district court's ruling.

Moreover, even if error had been preserved, we review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *Barney v. State*, 698 S.W.2d 114, 127 (Tex. Crim. App. 1985). To establish an abuse of discretion, there must be a showing that the defendant was "actually prejudiced" by the denial of his motion. *Janecka*, 937 S.W.2d at 468; *see also* Tex. Code Crim. Proc. Ann. art. 29.13 (West 2006) (providing that after trial has begun, continuance or postponement "may be granted . . . when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had"). When the appellant contends that he was prejudiced due to the absence of a witness, there must be a showing as to what evidence would have been produced had a continuance been granted. *See Peak v. State*, 522 S.W.2d 907, 909 (Tex. Crim. App. 1975); *see also* Tex. Code Crim. Proc. Ann. art. 29.06 (West 2006) (providing that motion for continuance based on absence of witness must state, among other things, "the facts which are expected to be proved by the witness, and it must appear to the court that they are material"). Frasier has failed to make such a showing. There is no indication in the record as to whether Hoffman would have refuted Neal's testimony regarding what Frasier had allegedly told him, or how Hoffman's testimony would have been material to Frasier's case in any other way. On this record, we cannot conclude that the district court abused its discretion in denying Frasier's oral motion for continuance. *See Ramirez v. State*,

976 S.W.2d 219, 224-25 (Tex. App.—El Paso 1998, pet. ref'd) (explaining that proper procedure following denial of motion for continuance is to "make a bill of exception or file a motion for new trial to explain how, if at all, Appellant was prejudiced by counsel's inadequate preparation time").

We overrule Frasier's second issue.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 5, 2010

Do Not Publish